## STATE v. RICKY SEVERTSON.

232 N. W. 2d 95.

July 11, 1975—No. 45474.

*Warren Spannaus,* Attorney General, *Peter W. Sipkins,* Solicitor General, *Richard B. Allyn,* Assistant Attorney General, *Gary Hansen,* Special Assistant Attorney General, and *Robert C. Tuveson,* County Attorney, for appellant.

*John O. Goodmanson,* for respondent.

SCOTT, JUSTICE.

This is an appeal by the state pursuant to Minn. St. 632.11 from a pretrial order of the district court suppressing certain personal papers of defendant which the state contends are necessary to establish defendant's guilt of two counts of constructive possession of controlled substances in violation of Minn. St. 152.-

09, subd. 1(2), and 152.15, subd. 2(2). The issue raised by the state is whether a seizure by police of papers not described in the search warrant is violative of defendant's Fourth Amendment rights. In reversing the suppression order, we hold that such a seizure was proper as not violative of the guarantees enumerated in the Fourth Amendment.

At about 11:30 p. m. on the evening of May 6, 1974, Greg Sickler, an undercover agent of the Minnesota Bureau of Criminal Apprehension (B.C.A.) went to the Dennis LaCore farm north of Albert Lea for the purpose of purchasing marijuana from LaCore pursuant to an earlier agreement. Upon completion of the purchase, Sickler and other law-enforcement officials who converged on the scene arrested LaCore, as well as his companion, James Modderman. Since the sale occurred outside, the officers could not, incident to the arrest, search the farmhouse or any of the farm buildings for more drugs. They therefore decided to secure the situation while a deputy sheriff went to town and obtained a warrant.

The deputy stated in the application for the warrant and its accompanying affidavit that an agent for the B.C.A. had personally seen marijuana in the cupboards in the kitchen and that he had also seen LaCore obtaining marijuana from an outbuilding on the premises. The deputy requested permission to search the farmhouse and the outbuildings for marijuana and its derivatives, together with equipment used in the cure, storage, refinement, manufacture, or other preparation of marijuana. The warrant issued gave the deputy the exact authority he sought.

Upon the return of the deputy with the warrant, the officers proceeded to conduct their search of the entire LaCore farmhouse, as well as all outbuildings. One of the rooms searched was a bedroom. As the officers were searching this room, but before they had discovered anything, one officer, without giving a Miranda warning, asked defendant Ricky Severtson, who was standing in the room, whether the room was his or if he was re-

siding at the farmhouse. Defendant answered that it was his room and that he had been residing at the farmhouse for about 2 weeks. He also said that a jacket in the room and a satchel on the bed were his property.

In a bureau drawer in the bedroom, an officer found a clear plastic box containing numerous pills, including Darvon and codeine. Mixed in with the items in the drawer were numerous papers and letters bearing defendant's name. The officers seized these for use in proving defendant's constructive possession of the pills.

The trial court, after a pretrial Rasmussen hearing, issued an order denying defendant's motion to suppress the pills and the statements defendant made in the room, but granting defendant's motion to suppress the seized papers. In its accompanying memorandum, the court stated that the search which led to the discovery of the drugs and papers was legal. However, based upon our holdings that in cases of this sort police cannot seize items lawfully discovered during a valid search, but not described in the search warrant, unless the items bear a reasonable relation to the described items, the lower court concluded that although the pills did bear such a relation, the papers did not. As to defendant's statements to the police, the court stated that although defendant was not free to leave, the officers had a right to ask simple investigatory-type questions of defendant because they had not yet pointed an accusatory finger at him. . .

The issue of the admissibility of defendant's statement to the officer while the room was being searched is not before us. As we indicated earlier, the only issue on this pretrial appeal is whether the police properly seized the papers even though they were not mentioned in the warrant.

After careful consideration we hold that the police acted properly in seizing the papers. The rule we have followed in reaching this conclusion is that where an officer, while lawfully executing a search warrant authorizing the seizure of certain items, comes upon other items that he has probable cause to believe are sub-

ject to seizure, he may seize them without first obtaining another warrant. To hold otherwise and require the officer in such a situation to obtain a second warrant would serve no other purpose than that of unnecessary formalism, Skelton v. Superior Court of Orange County, 1 Cal. 3d 144, 81 Cal. Rptr. 613, 460 P. 2d 485 (1969), and we do not believe that the United States Supreme Court would reach such a result. Indeed, in McCormick, Evidence (2 ed.), pp. 389 to 391, the author analyzes Coolidge v. New Hampshire, 403 U. S. 443, 91 S. Ct. 2022, 29 L. ed. 2d 564 (1971), as supporting the "plain view" theory upon which we now rely.

In prior cases this court has indicated that there must be a strong relationship between the seized items and the described items. See, e. g., State v. Michaelson, 298 Minn. 524, 214 N. W. 2d 356 (1973). Although one might argue that there is a strong relationship between the papers and the narcotics, we prefer to rely upon the requirement of Warden v. Hayden, 387 U. S. 294, 307, 87 S. Ct. 1642, 1650, 18 L. ed. 2d 782, 792 (1967), that there be "a nexus—automatically provided in the case of fruits, instrumentalities or contraband—between the items seized and criminal behavior." Under this test, it is clear that the officers had probable cause to believe that the papers were seizable because they were immediately facially recognizable as evidence which would connect defendant to the drugs found in the bureau drawer. See, State v. Garrett, 7 Ore. App. 54, 489 P. 2d 994 (1971).

Since the papers came in "plain view" of the officers while they acted within the scope of a lawful search pursuant to a warrant, and because they had probable cause to believe that the papers were seizable, a seizure of the papers was proper. Accordingly, we reverse the order suppressing the admissibility of the papers at trial.

Reversed and remanded for trial.