STATE of Minnesota, Respondent,

v.

James STREITZ, Appellant.

No. 47179.

Supreme Court of Minnesota.

Sept. 23, 1977.

William J. Mauzy, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., William. B. Randall, County Atty., Steven DeCoster, Asst. County Atty., St. Paul, for respondent.

Heard before PETERSON, KELLY and PLUNKETT, JJ., and considered and decided by the court en banc.

PETERSON, Justice.

Defendant, James Streitz, appeals from a judgment of conviction for receiving stolen property (Minn.St. 609.53, subd. 1[1]) and felonious theft (Minn.St. 609.52, subd. 2[1]), on the ground that evidence used against him was obtained in violation of his Fourth Amendment rights. He argues that the affidavit in support of a search warrant for his residence failed to state sufficient facts to support a finding of probable cause and that the search was an exploratory, general search outside the scope of the warrant. We affirm.

The March 17, 1976, search of defendant's residence at 273 Etna Street, St. Paul, resulted from a program of police surveillance of a residence at 8415 Red Oak Drive. Residents and frequenters of the latter address had been linked through eyewitness identification of them and their automobiles to a series of burglaries and thefts occurring in the northern suburbs of St. Paul during late February and early March 1976. Items reported as stolen included numerous firearms and ammunition, jewelry, coins, television sets, and various household appliances.

The results of the surveillance of 8415 Red Oak Drive were detailed in the affidavits in support of search warrants for that address and for 273 Etna Street: On March 12, 1976, a police officer saw two suspects carrying what appeared to be a small television or stereo, a lamp or vase-shaped object, and a pillowcase containing several cube-shaped objects from an automobile into the residence at 8415 Red Oak Drive. On March 15, 1976, a police officer saw a suspect carry a television set and two other items which he believed to be radio or stereo equipment from inside the house at 8415 Red Oak Drive and place them in an automobile. On March 16, 1976, a citizen informant saw two individuals remove from an automobile and carry into the 8415 Red

Oak Drive residence a console television partially covered by two gold blankets, and a gold-colored laundry basket containing unknown items. The following day, the police received a report of theft from a home in Coon Rapids of a console TV, two gold blankets, and a gold laundry basket, among other items. The earlier items brought into 8415 Red Oak Drive similarly coincided with descriptions of those reported as stolen.

Two incidents linked the residence at 8415 Red Oak Drive to defendant's residence. On March 15, 1976, police officers followed a suspect who left 8415 Red Oak Drive and drove to 273 Etna Street. There the suspect met an individual later identified as defendant. Together the two took something out of the trunk of the suspect's automobile and carried it into the house at 273 Etna Street. On March 17, 1976, a police officer observed two individuals at 8415 Red Oak Drive place two stereo speakers, 12 inches by 12 inches by 2 feet, dark brown woodgrain, dark speaker material, into an automobile. Another officer, Gary F. Dahl, followed the automobile to 273 Etna Street where speakers of the same description were carried from the automobile into the house. Investigation revealed that the theft of two Sylvania three-way speakers, Serial No. AS1710, had recently been reported.

On March 17, police officers obtained a search warrant for 8415 Red Oak Drive. Officer Dahl was present during commencement of that search and saw a gold wall clock on the premises which had previously been reported stolen. He subsequently left 8415 Red Oak Drive to obtain a warrant for 273 Etna Street. The officer attached to his affidavit in support of the warrant application a copy of the affidavit and application for the 8415 Red Oak Drive search warrant. The warrant for 273 Etna Street authorized a search of the residence, the garage, and an automobile for two Sylvania three-way speakers, Serial No. AS1710, and indicia of ownership of 273 Etna Street, St. Paul.

Shortly before midnight, March 17, seven officers from the St. Paul Police Department and the State Bureau of Criminal Apprehension converged at 273 Etna Street. The officers had earlier seen the defendant leave and had not seen him return. After about 15 minutes during which time no one responded to their knocking, one officer kicked in the door. Having seen a movement inside, several of the officers upon entering fanned out to conduct a search throughout the four or five rooms in the house to determine whether anyone was present. They found a dog in the kitchen which they placed in the basement, but found no people. They also deactivated the burglar alarm. These three initial activities consumed approximately 15 minutes.

During the course of this cursory, initial search, officers saw numerous guns in a bedroom, den, and a closet by the front door. They collected these, a total of 18, and placed them together in the den. They also saw two radar ovens, one of them located in the living room, two cameras, and a bag of marijuana.

Meanwhile, Officer Dahl saw the speakers which he had earlier observed being carried into the house. However, upon inspection he discovered that they were not Sylvania but Jensen speakers and were placed, one on top of the other, between the foyer and the living room. Dahl could see at least four other speakers in the living room, some with serial numbers obliterated or removed.

At this point, the officers were of the general consensus that the property listed above might be stolen. Upon being asked why they thought so, the officers who testified at the Rasmussen hearing stated that it was because of the large number of items, the fact that some of the items were without serial numbers, and the fact that the numerous guns were not stored or cared for as they would be by a collector.

Various of the officers began to take serial numbers of those items on which the numbers were readily apparent. One officer then telephoned the police dispatcher and gave him some of the numbers to run

through the Minnesota Crime Information System and the National Crime Information Center. This check revealed that at least two of the guns had been reported stolen, a Winchester .308 and a Remington 1100. The officer was also told that other guns, not identified to him by serial number, and reloading equipment had recently been reported stolen. At approximately 1 a. m., Officer Wills left to secure a search warrant for the property discovered on the premises and not listed in the first warrant.

Defendant arrived at the house at approximately 1:15 a. m., March 18. He was arrested and informed of his rights. The officers told defendant that they wanted to search his automobile and the garage, whereupon defendant unlocked the garage door. Inside, the officers saw two motorcycles, one under a tarpaulin and one uncovered. Defendant stated that one cycle was his and the other belonged to a friend whose whereabouts were unknown to him, and whose name he did not remember or would not disclose. One officer took down the serial number of the cycle allegedly belonging to the friend; the second cycle had no serial number visible to him.

Officer Wills returned with a search warrant at approximately 4 a. m. and seized guns, stereo speakers, television sets, and cameras.

Further investigation on March 18, 1976, revealed that one of the motorcycles had been stolen. Officer Wills secured from defendant a waiver and consent to search the garage at 273 Etna Street and seized the motorcycle.

Defendant moved to suppress the evidence taken from his home. After a Rasmussen hearing, the district court ruled the evidence admissible. Defendant was convicted of possession of the following stolen property: One Winchester 30–30 lever action rifle, Serial No. 2323970 with Weaver scope; one 12–gauge shotgun shell loader; one Winchester .308 rifle, Serial No. 16282; one Remington Model No. 1100 12–gauge magnum shotgun, Serial No. L738060M; one 1974 Harley Davidson 1200–cc. motorcycle, Serial No. VIN 2C45868H4; one Western Field 12–gauge shotgun, Serial No. G439085; and two Jensen Model No. 6 stereo speakers.

1. Defendant contends that the affidavit in support of the search warrant for his residence failed to state sufficient facts to support a finding of probable cause. The affidavits disclose that police investigation linked various individuals who resided at or frequented 8415 Red Oak Drive to a series of burglaries in suburbs north of St. Paul. Police had seen personal property of the kind reported stolen carried in and out of the residence at 8415 Red Oak Drive. Twice they had seen items carried by automobile from 8415 Red Oak Drive to 273 Etna Street. On one of these occasions, the property consisted of two stereo speakers which matched in description two speakers which had recently been reported stolen. Defendant was present when the speakers were brought into the house. A search pursuant to warrant of the residence at 8415 Red Oak Drive confirmed the belief of the police that stolen property was on the premises.

■ Probable cause is a matter of commonsense. On these facts, the magistrate could reasonably find probable cause to search the residence at 273 Etna Street for the two speakers which police had seen carried into the house.

■ 2. Defendant additionally contends that the search of his residence was a general, exploratory search that went beyond the scope specifically authorized by the search warrant. The Fourth Amendment requirement that a search warrant "particularly" describe the place to be searched and the persons or things to be seized is designed to prevent general, exploratory searches.

"General warrants, of course, are prohibited by the Fourth Amendment. '[T]he problem [posed by the general warrant] is not that of intrusion *per se*, but of a general, exploratory rummaging in a person's belongings . . . . [The Fourth Amendment addresses the problem] by requiring a "particular descrip-

tion" of the things to be seized.' *Coolidge v. New Hampshire*, 403 U.S. 443, 467, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564, 583 (1971). This requirement ' "makes general searches . . . impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant." ' *Stanford v. Texas*, 379 U.S. 476, 485, 85 S.Ct. 506, 512, 13 L.Ed.2d 431, 437 (1965), quoting *Marron v. United States*, 275 U.S. 192 at 196, 48 S.Ct. 74, 76, 72 L.Ed. 231, 237." *Andresen v. Maryland*, 427 U.S. 463, 480, 96 S.Ct. 2737, 2748, 49 L.Ed.2d 627, 642 (1976).

It is well established, however, that under particular circumstances and within narrowly defined exceptions, items not named in a search warrant may properly be seized. A common exception is that of "plain view." This exception is satisfied where an officer lawfully executing a search warrant, or otherwise engaged in a lawful intrusion, inadvertently comes across evidence whose incriminating nature is immediately apparent. *Coolidge v. New Hampshire*, 403 U.S. 443, 465, 91 S.Ct. 2022, 2037, 29 L.Ed.2d 564, 582 (1971). Defendant argues that the plain view exception is inapplicable in this case because the officers were outside the lawful scope of the search at the time they came across the seized items and that the incriminating nature of the evidence was not "immediately apparent" prior to the officers' recording the serial numbers and obtaining the information from the crime information center computer.

a. Lawful execution of the search warrant.

The trial court found that the officers confronted the evidence at issue while lawfully making an initial "quick and thorough search * * * to determine the presence of any occupants" and thereafter in the lawful execution of the search warrant "to locate both the stereo speakers described in the search warrant and the indicia of own-ership referred therein." Defendant argues that a cursory check of the premises is only justified where there is reason to believe that a security risk is present[1] or that destruction of contraband is threatened, neither of which circumstance was present here. And he argues that the search exceeded its proper scope as soon as the officers entered the house and saw near the door the speakers which were the ones they had seen being carried into the house but which were Jensen speakers and not the Sylvania speakers described in the warrant.

In the instant case, officers testified that because they had seen a movement inside they walked through the house to ascertain whether anyone was present in addition to the dog of which they were already aware. The trial court found that the officers had probable cause to believe the premises occupied. They had the additional purpose in going through the house of reaching the kitchen where the dog was located to ascertain whether it was loose. Although the dog was secured, they took it down to the basement. The third task undertaken by the police immediately upon entering the house was to turn off the burglar alarm activated by their entry. The record does not disclose where they had to go to effect this purpose.

Whether or not the evidence at issue in this case was properly within the "plain view" of the officers does not depend wholly upon whether or not they acted properly in their threefold purpose of checking for occupants, securing the dog, and deactivating the burglar alarm. From outside the house, officers had seen the numerous speakers in the living room. From where the Jensen speakers were located, the officers could see in the living room the "inordinate amount" of stereo equipment and a radar oven. Furthermore, the warrant authorized their search for indicia of ownership of the premises. Given these combined circumstances, the evidence supports the conclusion that the officers were not engaged in an exploratory rummaging when the objects at issue came into "plain view."

---

1. See, *United States v. Briddle*, 436 F.2d 4 (8 Cir. 1970).

b. Immediately apparent incriminating nature.

Defendant argues, in essence, that the necessity of taking and tracing serial numbers to determine whether the property was stolen belies the assertion that the incriminating nature of the property was immediately apparent.[2] He agrees that this requirement that the incriminating nature be immediately apparent means only that the officer must have probable cause to believe the property is subject to seizure. To require the police to secure a warrant when inadvertently coming across objects reasonably believed to be stolen "would serve no other purpose than that of unnecessary formalism." *State v. Severtson*, 304 Minn. 487, 490, 232 N.W.2d 95, 97 (1975).

The officers had probable cause to believe the property stolen. Defendant was believed to be part of a burglary ring responsible for the theft of much personal property, including firearms.[3] At his residence they found an unusual number of items, strangely stored or located, and with serial numbers removed. Although at the time the officers converged at 273 Etna Street they had no suspicions that they would find stolen property on the premises other than the speakers, what they found on the premises combined with the background information detailed in the affidavits gave rise to a reasonable inference that they had stumbled upon stolen goods.

The two cases upon which defendant relies are distinguishable: *United States v. Clark*, 531 F.2d 928 (8 Cir. 1976); *United States v. Gray*, 484 F.2d 352 (6 Cir. 1973). In *Clark*, police officers executed a search warrant for controlled substances at the residence and adjoining motorcycle repair shop of Clark. While on the premises, they recorded the serial numbers from various tools and motors, from rifles and a Browning pistol found in a drawer in a bedroom, and from Clark's stereo equipment. Some 3 weeks later, the serial number from the Browning pistol was relayed to a Federal agent whose investigation subsequently disclosed possible violations of Federal firearms statutes. A second warrant was issued and the pistol was seized. The district court granted defendant's motion to suppress the evidence because the pistol was obtained as the result of an illegal search and seizure. The court of appeals affirmed, noting the "random recordation of serial numbers" in concluding that the officers had conducted an exploratory search violative of Clark's Fourth Amendment right of privacy.

Similarly, in *United States v. Gray, supra*, an officer recorded the serial numbers from two rifles discovered in a closet during the course of the officer's search pursuant to a warrant for intoxicating liquors and apparatus or materials used in the manufacture of intoxicating liquors. A subsequent computer check revealed that the rifles were stolen. A second search warrant issued, the guns were seized, and Gray was convicted. The court of appeals reversed, holding that the evidence should have been suppressed.

In neither of these cases did the officers entertain a reasonable belief that the objects whose serial numbers they "randomly recorded" had been stolen, nor was there an unusual number of items, strangely located, and with serial numbers removed. In neither case, moreover, was the defendant believed to be a part of a burglary ring as was alleged in the affidavit in support of the first search warrant for 273 Etna Street.

2. It has been held that the recording of serial numbers constitutes a seizure. See, *United States v. Gray*, 484 F.2d 352 (6 Cir. 1973); *United States v. Sokolow*, 450 F.2d 324 (5 Cir. 1971). The state does not argue otherwise. If the incriminating nature of the property was not immediately apparent when the serial numbers were seized, then the second warrant would be invalid as being based upon illegally seized evidence.

3. This belief was stated in the affidavit in support of the search warrant for defendant's residence. That affidavit incorporated by reference the affidavit in support of the search warrant for 8415 Red Oak Drive. We properly consider the allegations contained in the affidavits in determining whether there was probable cause. Defendant ignores the affidavits and argues that the sole reason the officers concluded that the guns might be unlawfully possessed was the number of guns.

We hold that the property was in "plain view" and properly seized.

Affirmed.