## 41047. SHAW v. THE STATE.
### (320 SE2d 371)

Weltner, Justice.

Police officers entered the open business premises of Shaw's automobile repair shop during business hours, for the purpose of executing a search warrant relating to the front-half of a specified motor vehicle which was thought to be stolen. Under instructions of their superiors, they looked through the windshields of vehicles parked on Shaw's outdoor lot, and wrote down vehicle identification numbers, which were visible on the dashboard of each vehicle. No vehicle was entered; no door of any vehicle was opened; no physical object was seized from the vehicles. Two vehicles subsequently identified by computer check as stolen later were impounded.

Shaw's motion to suppress evidence relating to one of the vehicles later determined to be stolen was sustained by the trial court. The Court of Appeals reversed. We granted certiorari to determine whether, under these circumstances, recordation of vehicle identification numbers was authorized by the "plain view doctrine." *State v. Shaw*, 170 Ga. App. 404 (317 SE2d 298) (1984).

In *Sewell v. State*, 238 Ga. 495 (2) (233 SE2d 187) (1977), this Court approved the seizure, without a warrant, of pornographic material which "was displayed in a glass case in plain view for everyone who walked in to see." See also *Robinson v. State*, 143 Ga. App. 37, 40 (5) (237 SE2d 436) (1977). We are unable to perceive any rational distinction between observation through the glass of a display case, as in *Sewell*, supra, and observation through the glass of a windshield, as in this case. "There is no legitimate expectation of privacy [cits.] shielding that portion of the interior of an automobile which may be viewed from outside the vehicle by either inquisitive passersby or diligent police officers. In short, the conduct that enabled [the officers] to observe the interior of [the vehicles] was not a search within the meaning of the Fourth Amendment." Texas v. Brown, __ U. S. __ (103 SC 1535, 1542; 75 LE2d 502) (1983). Accordingly, the judgment

of the Court of Appeals must be affirmed.

*Judgment affirmed. All the Justices concur, except Smith, J., who dissents.*

DECIDED SEPTEMBER 26, 1984 —
REHEARING DENIED OCTOBER 16, 1984.

*William Ralph Hill, Jr.,* for appellant.

*David L. Lomenick, Jr., District Attorney, J. Robert Sparks, Assistant District Attorney,* for appellee.

SMITH, Justice, dissenting.

This is a warrant case involving a fenced area behind the garage and office of a body shop. The warrant in this case authorized the officers involved to search the enclosed area for the front end, or clip, of a 1981 Monte Carlo with vehicle identification number 1G1A Z37J1BK469818. This was the sole "instrument, article, or [thing]" described in the warrant.

The special agent for the Georgia Bureau of Investigation who led the search testified that he was instructed prior to the search to inspect every vehicle on the lot. He stated that he and the other agents did "make a check of all of the vehicles that were there." They inspected sixty-five vehicles and did not see a 1981 Monte Carlo.

"The officer [can] not use [a] warrant as a pretext for launching a full scale investigation as to the origins of an item which [is] not incriminating on its face." *Hogan v. State,* 140 Ga. App. 716, 718 (231 SE2d 802) (1976). The agent in this case has testified that he did use the warrant in exactly this manner. He was quite aware that the sixty-five cars he had searched were not Monte Carlos. A warrant to search for one particular car was used to effect a blanket sweep of the entire enclosed area adjacent to the body shop. This search was actually a general search, prohibited by the Fourth Amendment to the U. S. Constitution and Art. 1, Sec. 1, Par. 13 of the Georgia Constitution. *Hogan,* supra; Marron v. United States, 275 U. S. 192 (48 SC 74, 72 LE 231) (1927).

The majority reaches the conclusion that the "recordation of the vehicle identification numbers was authorized by the 'plain view doctrine.'" Under the plain view doctrine, the investigating officer must be lawfully in a position to observe the evidence in question, his discovery of the evidence must be inadvertent, and there must be probable cause to associate the evidence with criminal activity. Texas v. Brown, 460 U. S. 730 (103 SC 1535, 75 LE2d 502) (1983); Coolidge v. New Hampshire, 403 U. S. 443 (91 SC 2022, 29 LE2d 564) (1971).

Here, the agents entered appellant's lot with a valid search war-

rant. The recordation of the numbers, however, could hardly be said to be inadvertent. The agent in charge, possessing a warrant naming one specific automobile, testified that he was instructed to "check" all of the vehicles, intended to "check" all of the vehicles and did "check" all of the vehicles. When a man says that he is going to do something and then does it, his actions can hardly be said to be inadvertent. The agent clearly used his warrant as a pretense to acquire certain evidence. See Coolidge, supra at 470, 91 SC at 2040.

Even if the discovery of the evidence here could be described as inadvertent, the court must still determine that the evidence would give the investigating officer probable cause to believe that the evidence is connected with a crime. Here, the agents could have discovered two things in their search. The vehicles could have had vehicle identification numbers, or the vehicles could have lacked vehicle identification numbers.[1]

If the vehicles did not have identification numbers, the agents would have had evidence that a crime had taken place. See OCGA §§ 40-4-6, 40-4-21. If the court determines that the presence of an identification number establishes probable cause, as it must in order to apply the plain view exception here, then all that an officer has to do to establish probable cause in this state is to look where the identification number should be. The presence of the identification numbers established lawful behavior. Only the illegal acts of the agents involved turned up evidence of criminal behavior.

The majority cites *Sewell v. State*, 238 Ga. 495 (233 SE2d 187) (1977), in support of its holding. The court states that it sees no difference between the observation through glass in a display case in *Sewell* and the observation through glass in a windshield here. The medium through which an officer observes evidence will generally prove to be irrelevant to the plain view issue. Many officers themselves wear glasses.

The plain view issue hinges most often on the context and the object of the observation. The observation of a bloody knife or a bazooka through a windshield will probably establish probable cause, where the sight of an identification number on an object in a display case often would not. The object of the observation in *Sewell*, supra, was clearly contraband according to the court. Here, the object of the observation is just as clearly not indicative of criminal activity.

In addition, *Sewell*, supra, clearly involved a retail area and did not involve a warrant. This case revolves around the search of an area that was not clearly open to the public. The search was limited by the

---

[1] Actually, the agents' search should not have even reached the identification number once it was established that the vehicle under observation was not a 1981 Monte Carlo.

warrant. *Sewell* is irrelevant to the majority's holding.[2]

The passage of Brown, supra, cited in the majority opinion is inapposite to this case for at least three reasons. First, the passage dealt with the first issue in the case: whether the officer was legitimately present at the scene when he observed the evidence in question. Here, the agent possessed a warrant to search appellant's property. The quoted passage does not relate to any contested facet of the plain view issue in this case. It is purely superfluous.

In addition, the quoted passage held that there was no search involved in Brown. Here, we have a search warrant and an entry onto private property. I should hope that the agents' actions constituted a search.

Finally, Brown does not support a holding that the sight of the vehicle identification numbers establishes probable cause, a necessary requirement for a finding of the plain view exception. The officer in Brown testified that he recognized the balloon that fell from the defendant's pocket and the vials in the glove compartment as drug paraphernalia. "A 'practical, nontechnical' probability that incriminating evidence is involved" could hardly have developed in Brown had the officer there looked into the car and seen a vehicle identification number. Brown, supra, 103 SC at 1543. Brown, if anything, supports the trial court's original decision.

As this search was actually a general search and did not fall under the plain view exception, I would reverse the Court of Appeals' opinion and reinstate the ruling of the trial court.

---

[2] *Robinson v. State*, 143 Ga. App. 37 (237 SE2d 436) (1977), cited with *Sewell*, is almost identical in its facts and its holding. For this reason, it is equally out of place in the opinion.