The STATE of North Dakota,
Plaintiff and Appellant,

v.

Robert RIEDINGER, Defendant
and Appellee.

The STATE of North Dakota,
Plaintiff and Appellant,

v.

Eugene FRANK, Defendant
and Appellee.

Cr. Nos. 1047, 1048.

Supreme Court of North Dakota.

Oct. 1, 1985.

Richard L. Schnell, State's Atty., Mandan, for plaintiff and appellant; argued by Richard L. Schnell.

Ken R. Sorenson, Bismarck, for defendant and appellee Riedinger; argued by Ken R. Sorenson.

Pulkrabek & Tuntland, Mandan, for defendant and appellee Frank; argued by Terrence McGannon, Senior Law Student, University of North Dakota Law School; appearance by Thomas M. Tuntland.

MESCHKE, Justice.

We consider whether a stolen microwave oven, identified by serial number during the course of a valid search for drugs and money, should be suppressed as not properly seized under the "plain view" exception to the Warrant Clause of the Constitution. We also consider whether stolen goods and related evidence seized pursuant to second and third search warrants should be suppressed because those warrants stemmed from the discovery and seizure of the stolen microwave oven. We hold that none of the evidence of stolen goods should be suppressed.

The State appeals from an order suppressing "all other evidence seized" under a series of three search warrants, except controlled substances and paraphernalia held properly seized under the initial warrant. We reverse as to the stolen microwave oven and the evidence of stolen goods seized on the second and third warrants.

## I. FACTS

On March 13, 1984, Special Agent Maixner of the North Dakota Drug Enforce-

ment Unit arranged an undercover purchase of marijuana from Mr. Fetzer in a parking lot in Mandan. When Fetzer left to get the marijuana he was followed by Special Agent Nicks and Mandan Police Officer Dever to the home of Eugene Frank and Wayne Otto in Mandan.

Officer Dever saw Fetzer speak to Otto on the back steps of the house. Although no exchange of money or marijuana was observed, Fetzer remained under constant surveillance until he returned and delivered the marijuana to Agent Maixner in the parking lot. Fetzer was arrested and searched, but the money that he had received was not found. The officers sought a warrant to search the house for the money and controlled substances.

Before applying for the search warrant, Agent Maixner unsuccessfully attempted to contact Agent Milton Lennick of the North Dakota Crime Bureau to consider whether they should also search for stolen goods. Agent Lennick had once told Officer Dever that Otto had been seen in the area of a burglary, which had led Dever to keep Otto under some surveillance.

Agent Maixner obtained the warrant from the County Judge to search the Frank and Otto residence for "concealed controlled substances ... including marijuana and currency consisting of five fifty dollar bills," and to seize the described items, if found.

Accompanying Agent Maixner to execute the search warrant, Officer Dever thought it also might be an opportunity to see stolen goods as evidence to connect Otto with burglaries.

The search was made at about 6:15 p.m. Robert Riedinger was the only one in the house. In continuing the search in the basement of the house, the officers found a microwave oven sitting on a cooler. It was not plugged in, nor in apparent use. Agent Maixner picked up the oven and held it while another officer copied the serial number, which was embossed on a small strip on the back of the oven.

The officers radioed the serial number to the Mandan police station, which ran a computer check on the serial number through the National Crime Information Center, a national computer service for stolen goods. While still at the house, the officers received word by radio that the microwave oven was stolen. They seized the microwave, along with marijuana and paraphernalia, and a number of other unrelated items: pellet gun, a wooden box, a splicing knife, 2 receipts, a paper with numbers, a notebook, a lease, and a pistol.

Also observed during the search, but not seized, were an ornamental sword approximately three feet long with red, green and gold designs and an antique black horse collar with a battery powered clock mounted within it. After the search, the officers obtained information that identified those two items as stolen property. They also observed a blue 1966 Ford car on the premises. The officers noticed that the Ford had a broken arm rest and later used that information to connect the car with a particular burglary through a piece of the broken arm rest left where a stolen safe had been unloaded.

Linking the microwave oven and their observations during the search with other information, the officers obtained and executed two additional search warrants on March 14, 1984, one to search and seize specific stolen property, burglary tools, and evidence in the house and one to search the vehicle and seize the broken arm rest and any burglary tools found in it. A number of items of stolen goods and related evidence were seized pursuant to these warrants.

## II. STATEMENT OF THE CASE

Eugene Frank and Robert Riedinger were charged with possession of stolen property. Frank moved to suppress all items seized upon the grounds that the officers "relied on illegally obtained evidence to secure their statement of probable

cause" to obtain the warrants. Reidinger joined in the motion to suppress.[1]

After hearing, the District Court entered an order denying the motion to suppress the controlled substances and paraphernalia seized but suppressing "all other evidence seized" in executing the three search warrants of March 13 and 14.

The District Court found that the officers "were legally on the premises pursuant to a valid narcotics search warrant" for the initial search, but that they "began a random, exploratory search and seizure," and seized the nine unrelated items which they had no "reason to believe ... were contraband, stolen, evidence of a crime, or used in the commission of a crime."

Since they "entered the premises with the hope and intention of finding evidence of other crimes unrelated to the subject of the search warrant," the District Court determined that the officers "acted in bad faith in engaging in a general exploratory search."

Specifically as to the microwave oven, the District Court found:

"To determine the serial number the officers had to pick up or otherwise move the microwave and inspect the oven closely."

The District Court went on to find that "it was only because the police took the serial number from the microwave oven" that the officers were able to develop information linking the ornamental sword and horse collar clock to burglaries in the same county where the microwave oven was stolen.

The District Court concluded that both the second and third search warrants were "based on the illegally obtained serial number" and that "probable cause for the issuance of the second and third search warrants was based solely on evidence obtained because of the bad faith exploratory search of the police in the execution of the initial narcotics search warrant." There was also a finding that "there is no reason

to believe that the evidence seized would have inevitably been discovered if the police had not engaged in a general exploratory search."

The State urges on appeal that the officers could properly check the serial number of the microwave oven and that it was properly seized as contraband in "plain view," so as to validate the evidentiary use of it as well as the items seized on the next two warrants. The State alternatively argues that the stolen property seized on the second and third search warrants would have been inevitably discovered or discovered from an independent source and should not therefore be suppressed.

## III. SEARCH AND SEIZURE

Our heritage applies constitutional restraints on law enforcement officers in carrying out their duties in searches and seizures. The United States Constitution, Fourth Amendment, and the Constitution of North Dakota, Article I, Section 8, are virtually identical:

"The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, [and] particularly describing the place to be searched and the persons and things to be seized." [2]

For nearly two hundred years, this constitutional principle has guided judges in weighing law enforcement practices, balancing rights of individual liberty with the common interests of a form of government founded to justly insure those rights.

Court decisions have balanced the preferred warrant procedure with certain generally recognized exceptions for warrantless searches and seizures which are considered reasonable because of practical necessities. As stated in *State v. Gagnon*, 207 N.W.2d 260, 263 (N.D.1973) and repeated in

---

1. No issue of standing has been raised.

2. The bracketed "and" appears in the Fourth Amendment to the United States Constitution, but not in the Constitution of North Dakota.

*State v. Matthews*, 216 N.W.2d 90, 99 (N.D. 1974):

"All searches made without a valid search warrant are unreasonable unless they are shown to come within one of the exceptions to the rule that a search must be made upon a valid search warrant."

Something about the current approach to exceptions to the warrant requirement for searches and seizures can be gathered from the following summary by Justice White, writing for the majority in *New Jersey v. T.L.O.*, 469 U.S. ——, 105 S.Ct. 733, 83 L.Ed.2d 720, (1985):

"Although the underlying command of the Fourth Amendment is always that searches and seizures be reasonable, what is reasonable depends on the context within which a search takes place. The determination of the standard of reasonableness governing any specific class of searches requires 'balancing the need to search against the invasion which the search entails.' *Camara v. Municipal Court, supra*, [387 U.S. 523] at 536–537, 87 S.Ct. [1727] at 1735 [18 L.Ed.2d 930 (1967)]. On one side of the balance are arrayed the individual's legitimate expectations of privacy and personal security; on the other, the government's need for effective methods to deal with breaches of public order." *New Jersey v. T.L.O.*, [—— U.S. ——], 105 S.Ct. 733 at 741 [83 L.Ed.2d 720 (1985)].

■ The exclusionary rule, which holds evidence from unreasonable searches and seizures inadmissible, is the judicial remedy used to enforce the constitutional constraints. *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *State v. Manning*, 134 N.W.2d 91 (N.D.1965).

These basic principles of search and seizure are well fixed and widely, though not uncritically,[3] acclaimed. Their exact applications to specific cases in an increasingly complex society are less certain and much debated.[4]

## IV. OBJECTIVE STANDARDS

■ The district court found that these officers "acted in bad faith" because they candidly testified that they went about the initial search for drugs and money with suspicions of other crimes, thinking that it might be possible to also identify stolen goods in the course of the search.

While some courts have, in the past, analyzed search and seizure issues in terms of the underlying motive or intent of the officers involved, this Court has not directly dealt with the matter. Recently, in *Scott v. United States*, 436 U.S. 128, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978), the United States Supreme Court addressed this method of analysis, and concluded:

"Although we have not examined this exact question at great length in any of our prior opinions, almost without exception in evaluating alleged violations of the Fourth Amendment the Court has first undertaken an objective assessment of an officer's actions in light of the facts and circumstances then known to him.

\* \* \* \* \* \*

"We have since held that the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action.... The Courts of Appeals which have considered the matter have likewise generally followed these principles, first examining the challenged searches under a standard of objective

---

3. *See, e.g.,* Justice Black's separate concurring and dissenting opinion in *Coolidge v. New Hampshire,* 403 U.S. 443, 493, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

4. Justice Stevens, dissenting in *New Jersey v. T.L.O.,* 469 U.S. ——, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985), in footnote 12, identified twenty-three "Fourth Amendment cases involving criminal prosecution since October Term, 1982," decided by the United States Supreme Court alone. There have been at least six more such decisions since (*e.g., California v. Carney,* 471 U.S. ——, 105 S.Ct. 2066, 85 L.Ed.2d 406, (1985)), making an astonishing total of thirty in three years.

reasonableness without regard to the underlying intent or motivation of the officers involved." *Scott*, 436 U.S. at 137–38, 98 S.Ct. at 1723–24.

Other courts[5] and constitutional scholars[6] have taken the position that Fourth Amendment issues should normally be resolved by objective standards, without reference to the underlying intent or motivation of the officers involved.

Our consideration leads us to adopt this later approach for this case. We do not say that motive or intent of officers is never relevant to determination of a search and seizure issue, or that experience may not bring us to conclude that it is of critical importance in at least some cases. Rather, we hold in this case that, measured by objective standards, the motivation of these officers was not sufficiently "bad" to condemn their conduct.

Society expects law enforcement officers to exhibit alertness and probing thoughtfulness, qualities inherent in their training and work, in seeking to solve crimes. It is unrealistic to expect officers to leave reasonable suspicions behind when they enter premises to execute a search warrant. Courts should not condemn such good law enforcement qualities unless compelled by overriding reasons.

In this case, despite the fact that the officers' suspicions had some real basis, a specific search for stolen goods was not authorized, perhaps because their suspicions had not yet attained the necessary degree of certainty for probable cause, or because they were unable to obtain complete information before seeking the initial warrant. Nevertheless, their reasonable suspicions were part of the scene as they walked into the house to commence the initial search. Courts cannot require officers to close either their minds or their eyes when they execute a search warrant. It is the officers' conduct, not their

thoughts, that should be considered. We have previously observed "that mere suspicion that contraband or evidence will be found will not invalidate an otherwise valid ... search...."; *State v. Gelvin*, 318 N.W.2d 302, 307 (N.D.1982). We extend that observation to this case.

Accordingly, we set aside the trial court's finding that these officers "acted in bad faith" when they entered the house "with the hope and intention of finding evidence of other crimes unrelated to the subject of the search warrant." The evidence of "bad faith" is too scant to save such a finding.

## V. SEIZURES

Three categories of items were seized in the initial search: drugs and paraphernalia; unrelated items; and the hotly disputed microwave oven. In addition, contraband items were seized pursuant to the second and third warrants.

### A. Warranted Items

■ The drugs and paraphernalia seized were adequately described in the warrant, or were so closely related to described items, that no comment is required. The trial court's denial of the motion to suppress as to those items was clearly correct.

### B. Unrelated Items

■ The trial court's suppression of the unrelated items seized during the course of the search pursuant to the initial warrant was also clearly correct. No effort was made in the trial court, nor on this appeal, to justify the seizure of those unrelated items and the trial court found that "none of the officers involved had any reason to believe that any of the[se] items seized were contraband, stolen, evidence of a crime, or used in the commission of crime." See Rule 41(b), N.D.R.Crim.P.[7]

---

5. *State v. Bruzzese*, 94 N.J. 210, 463 A.2d 320 (1983).

6. 1 W. LaFave, *Search and Seizure*, § 1.2 (Supp. 1985 at 47).

7. Suppression is not the only possible consequence of wrongful seizure. Rule 41(e), N.D. Crim.P. provides:

 *"Motion for Return of Property.* A person aggrieved by an unlawful search and seizure

■ These wrongful seizures present the most troublesome aspect of this case because they tend to support the trial court's determination that the officers were "engaging in a general exploratory search." In some cases, a general exploratory search may invalidate the entire search and seizure, even though done pursuant to an otherwise valid warrant.[8]

■ The findings do not disclose whether these unrelated items were seized before or after identification of the microwave oven, the key item which is the focus of this case. Furthermore, it is clear from the trial court's findings that it was the microwave oven, and not these unrelated items, that was used to connect with other information which led to the issuance of the second and third warrants. Under these circumstances, we conclude that the seizure of these miscellaneous unrelated and unwarranted items should not alone invalidate the seizure of the microwave oven where suppression of the rest of the evidence seized by warrants turns on the propriety of the seizure of the microwave.

## C. The Microwave Oven

One well-established exception to the basic warrant requirement is the "plain view" doctrine, followed by this Court in *State v. Kottenbroch*, 319 N.W.2d 465, 471 (N.D. 1982):

"A seizure of evidence of a crime found in plain view is legitimate even though the items seized are not listed in the search warrant or, if the search is a warrantless search, the items are not items for which the searching officer had

probable cause to believe were in the area being searched. To fall within the plain view doctrine, the initial intrusion must be supported either by a warrant or by one of the recognized exceptions to the warrant requirement. Additionally, the discovery must be inadvertent and within the proper scope of the search. *Coolidge v. New Hampshire*, 403 U.S. 443, 465, 91 S.Ct. 2022, 2037, 29 L.Ed.2d 564 (1971)."

The State argues that the microwave oven "was in plain view and in a suspicious place and that the officer had the right to radio in the serial number." To support its argument, the State relies upon the recent decision and plurality opinion in *Texas v. Brown*, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) applying the "plain view" doctrine to uphold a seizure of an object whose incriminating nature was "apparent" only because of the officer's expertise. The State also cites several decisions upholding the seizure of tape recordings under "plain view" doctrine, although the incriminating nature of the tapes could not be identified without playing them: *United States v. Bonfiglio*, 713 F.2d 932 (2d Cir. 1983); *United States v. Whitten*, 706 F.2d 1000 (9th Cir.1983); and additionally relies on a series of cases holding that "minimal intrusions" to check serial numbers is either not a search or is authorized during the course of an otherwise valid search: *United States v. Ware*, 457 F.2d 828 (7th Cir.1972); *People v. Wolf*, 60 Ill.2d 230, 326 N.E.2d 766 (1975); *Commonwealth v. Navarro*, 2 Mass.App. 214, 310 N.E.2d 372 (1974) (opening a car door to check vehicle

may move the trial court for the return of property on the ground of being entitled to lawful possession of the property illegally seized. The judge shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted the property must be restored and it is not admissible in evidence at any hearing or trial. If a motion for return of property is made or comes on for hearing in the trial court after an indictment, information, or complaint is filed, it must be treated also as a motion to suppress under Rule 12."
(However, it should be noted that "property which is considered contraband does not have

to be returned even if seized illegally." Explanatory Note to Rule 41, N.D.R.Crim.P., North Dakota Court Rules (1984 Desk Copy at 313).)
Also, when officers of the law exceed their lawful power and authority, by wrongful seizure in deprivation of constitutional rights, they are exposed to personal liability. *See* 42 U.S.C. § 1983; *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); Annot., 1 A.L.R.Fed. 519, 533 (1969).

8. *United States v. Clark*, 531 F.2d 928 (8th Cir. 1976).

identification numbers); *Klenke v. State,* 581 P.2d 1119 (Alaska 1978); *State v. Streitz,* 258 N.W.2d 768 (Minn.1977) (in the course of an otherwise valid search); and *United States v. Gunn,* 428 F.2d 1057 (5th Cir.1970) (crawling under a vehicle to copy serial numbers of tires).

The defendants take the position that not only must the object be "immediately apparent," but also its "incriminating character" must be "immediately apparent;" that is, where there is no relationship between objects named in the search warrant and an observed object, such as the microwave oven, a standard of probable cause should apply, so that the officer would not be justified in seizing the object, or even in looking more closely at it, unless he had more than a mere suspicion that it was incriminating. The defendants rely upon *United States v. Clark,* 531 F.2d 928 (8th Cir.1976), where the police copied down the serial number from what turned out to be a stolen pistol while executing a warrant for drugs, and the Court held:

> "The third requirement, however, was not met in the instant case. There is no adequate foundation in the record to support the conclusion that the incriminating nature of the pistol was 'immediately apparent.' * * * In actuality, it was necessary for Agent Gromer to turn over the pistol's serial number to the federal agent and for the federal agent to trace the origin of the pistol before its incriminating nature could be said to be immediately apparent." 531 F.2d at 932.

The defendants also cite, in support of their position, *United States v. Gray,* 484 F.2d 352 (6th Cir.1973); *United States v. Sokolow,* 450 F.2d 324 (5th Cir.1971); and *State v. Wilson,* 279 Md. 1223, 367 A.2d 1223 (1977), all holding that the copying of a serial number, from an item unrelated to the warrant upon which the search was being conducted, was a wrongful seizure justifying suppression.

■ Defendants concede that the first *Coolidge* requirement, that the police officers were in a lawful position to view the article, was met since the officers were on the premises pursuant to a valid search warrant. We would go further and observe that the authorized intrusion, to search for drugs and money, necessitated a thorough and intense search. The fact that the money was not found emphasizes this.

■ Defendants contend, however, that the discovery of the microwave oven was not inadvertent since the officers candidly admitted that they were on the lookout for goods they might identify as stolen, and therefore the second requirement of *Coolidge* was not met and a plain view seizure was not justified. However, our observation in *State v. Gelvin, supra,* 318 N.W.2d at 307, that "mere suspicion that contraband or evidence will be found will not invalidate an otherwise valid ... search ...," applies as well to the officers' conduct here. While reasonably suspecting the possibility of stolen property, the officers did not know in advance of the actual existence or location of · the microwave oven. Thus, its discovery was inadvertent.

It is the "immediately apparent" requirement which presents the most difficulty in this case. Both the defendants and the State make strong arguments on that point.

In *Texas v. Brown, supra,* all nine justices concurred in holding that seizure of a balloon, which was observed in a car during a routine license check, and which turned out to contain heroin, was justified under the plain view doctrine. Justice Rehnquist, writing for a four judge plurality, held that the officer's reasonable suspicions that such a balloon often contained drugs was sufficient probable cause, stating that the fact that the officer "could not see through the opaque fabric of the balloon is all but irrelevant: the distinctive character of the balloon itself spoke volumes as to its contents—particularly to the trained eye of the officer." Justice Powell, with Justice Blackmun, held that "a law enforcement officer may rely on his training and experience to draw inferences and make deductions that might well elude an

untrained person," to conclude that there was probable cause to seize the balloon since the officer knew of cases where "narcotics were carried in tied-off balloons." Justice Stevens, with two others, concurred, holding that "contraband need not be visible in order for a plain view seizure to be justified," and went on to say: "For the reasons stated by Justices POWELL and REHNQUIST, I agree that the police officer invaded no privacy interest in order to see the balloon, and that when he saw it he had probable cause to believe it contained drugs."

■ Paraphrasing those parallel views from *Texas v. Brown, supra,* and applying them to this case, we hold that the officer carrying out this intensive drug and money search "invaded no privacy interest in order to see" the microwave oven and its serial number. If "contraband need not be visible in order for a plain view seizure to be justified," then the fact that the serial number was examined to further the officer's reasonable suspicions that the microwave oven was stolen goods is irrelevant. The distinctive location of the oven, not in use and placed on a cooler in a basement area, was significant "to the trained eye of the officer." Moving the oven to examine the inside of the cooler beneath it was certainly within the scope of the valid warrant search. Examination of the serial number on it involved no significant privacy expectations of the defendants. Justice Powell's observation that "a law enforcement officer may rely on his training and experience to draw inferences and make deductions that might well elude an untrained person," seems particularly pertinent to this case. And finally, Justice Rehnquist's elaboration about "bending" and peering underscores that picking up the oven to check its serial number is not significant in this case:

"Likewise, the fact that [the officer] 'changed [his] position' and 'bent down at an angle so [he] could see what was inside' Brown's car ... is irrelevant to Fourth Amendment analysis." 103 S.Ct. at 1542.

■ Under these slightly differing rationales of "plain view" doctrine, which combined to produce the unanimous result in *Texas v. Brown, supra,* we believe that the officer's reasonable suspicions that the oven was stolen goods justified the very minimal intrusion on privacy to check the serial number. Upon verification of its stolen character via radio, it was "immediately apparent" that there was probable cause to justify its seizure as stolen property contraband.

In addition to reasoning from the views expressed in *Texas v. Brown, supra,* we are aided in reaching our conclusion in this case by several other decisions: [9] In *Shaw v. Georgia,* 253 Ga. 382, 320 S.E.2d 371 (1984), *cert. denied,* — U.S. —, 105 S.Ct. 1183, 84 L.Ed.2d 331 (1985), the Georgia Supreme Court held that peering through a windshield for identification numbers was justified under the "plain view" doctrine. In *United States v. Blum,* 753 F.2d 999, 1001 (11th Cir.1985), the court held that "the evidentiary value" of "bills, invoices, bills of lading, and yellow pads with handwritten notes about orders" "would be apparent" once they were observed in open boxes and a glass cabinet during the execution of a warrant for "merchandise fraudulently obtained."

Similarly, in *United States v. Minor,* 756 F.2d 731, 736 (9th Cir.1985), the court held that records were properly seized in the course of a valid warrant search, where the records were not named but were in "plain view," and were "immediately identifiable

---

**9.** The United States Supreme Court has agreed to review a holding from New York's highest court which reversed a conviction for criminal possession of a weapon where an officer's nonconsensual entry into an individual's auto to determine the vehicle identification number during a stop for a traffic violation resulted in discovery of the firearm in the auto. *People v.*

*Class,* 63 N.Y.2d 491, 483 N.Y.S.2d 181, 472 N.E.2d 1009 (1984), *cert. granted,* — U.S. —, 105 S.Ct. 1863, 85 L.Ed.2d 157 (1985). While we can only speculate as to the significance of the grant of review, procedural regularity does not permit us to defer our decision in this case to await the teachings of the United States Supreme Court in such a related case.

as probable contraband or evidence of illegal activity, based either on his own experience or the expertise of ... experts present during the search." We see no difference between the use of radio communication in this case to identify the microwave as stolen, and the use of experts present at the scene of the search in *Minor*, to confirm the probable cause of the executing officer's own experienced judgment and observation. *See also, United States v. Murray*, 751 F.2d 1528 (9th Cir. 1985) where the officers executing a search warrant for other items telephoned the prosecuting attorney to verify that merchandise discovered was evidence relevant to a crime.

We conclude that the microwave oven was in "plain view" and the officers had probable cause to seize it as contraband in the course of the search on the first warrant. Accordingly, we hold that it was properly seized and its suppression was error.

**D. Second and Third Warrant Seizures**

 Since we hold that the microwave oven was properly seized as contraband in the course of the initial warrant search, it follows that the evidence seized pursuant to the second and third warrants, which were based upon information connected to the microwave oven, were also properly seized. The use of warrants is the preferred procedure, and the products of valid search warrants should not be suppressed except for clear and compelling reasons. Therefore, we hold that it was error to suppress the evidence seized pursuant to the second and third warrants.[10]

**VI. CONCLUSION**

We hold that it is proper, within the "plain view" exception to the Warrant Clause, to look closely enough at a microwave oven, which was not in use and had to be lifted from the cooler upon which it was placed, in the course of an intense valid warrant search for drugs and money, to obtain its serial number, where the officers' experience and information led them to reasonably suspect it was stolen. The officers had probable cause to seize the microwave oven as contraband where they confirmed by radio while on the premises that it was stolen, even though it was not within the scope of the warrant which they were executing.

Accordingly, neither the microwave oven nor the evidence seized pursuant to the two later warrants, which were based upon information connected with the microwave oven, should have been suppressed. Therefore, we reverse the trial court's order of suppression as to the microwave oven and the evidence seized on the second and third warrants.

ERICKSTAD, C.J., and GIERKE, J., concur.

VANDE WALLE, Justice, concurring specially.

I, like Justice Levine, am bothered by the officers' "bad faith" in entering the premises with the hope and intention of finding evidence of other crimes unrelated to the subject of the search warrant.[1] Furthermore, I agree with Justice Levine that we reverse a suppression order only when there is insufficient competent evidence fairly capable of supporting the trial

---

**10.** In view of our holding that it was error to suppress the microwave oven under the plain view doctrine, and thus also error to suppress contraband items seized upon following warrants, it is not necessary for us to address the State's "inevitable discovery" and "independent source" arguments. Nor is it necessary to consider the "good faith" exception to the exclusionary rule recently adopted by the United States Supreme Court in *United States v. Leon*, 468 U.S. ——, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), as to the items seized under the second and third warrants.

**1.** Although I am bothered by the officers' admitted intent of looking for evidence of other crimes not covered by the search warrant, I cannot equate that "bad faith" intent with the cases referred to in footnote 1 of the dissenting opinion which, as the footnote indicates, all involved the use of evidence which the prosecution knew to be false in order to obtain convictions. There is little, if any, similarity between this situation and the "bad faith" involved in those cases.

court's determination concerning the suppression of evidence. In this instance, however, it appears to me that the issue surrounding the suppression order involves more of a question of law than a question of fact and that the factual standard on review is not therefore controlling. That question of law is whether or not the motives of the officers, i.e., their intent and hope of discovering evidence of other crimes, vitiates the validity of the warrant and the application of the "plain view" doctrine. I agree with the majority opinion that the officers' intent is immaterial if they were on the premises legally and the items seized were in "plain view."

Although the officers had to lift the microwave oven to find the serial number I have great difficulty in concluding that effort involved a "search" within the meaning of the constitutional prohibition against unreasonable searches and seizures. Considering what knowledge the officers possessed, I believe that if the serial number were emblazoned on the door of the oven that the officers, because they were on the premises under a valid search warrant, would not be prohibited from contacting headquarters to determine whether or not the oven was stolen, regardless of their motives. The action of lifting the oven, which undeniably was in plain view, to look for the serial number is, at worst, a *de minimis* intrusion, if indeed it is an intrusion at all.

The opinion of the trial court and the dissenting opinion reflect the distaste for the "bad faith" of the officers in entering the home, albeit with a valid search warrant, with the hope and intent of discovering evidence of crimes unrelated to the subject of the search warrant. This distaste has apparently been transferred to the issue before us and would result in what I believe to be an unwarranted restriction of the "plain view" doctrine by attempting to obfuscate the fact that the police officers were on the premises under a valid search warrant.

LEVINE, Justice, dissenting.

I dissent. If we were the fact-finders I might be less hesitant to join the majority. But we are not. On appeal we recognize the significance of the trial court's opportunity to assess the credibility of witnesses by according great deference to its decision in suppression matters. *State v. Ronngren*, 361 N.W.2d 224 (N.D.1985). Consequently, we will reverse, after resolving conflicts in the testimony in favor of affirmance, only when there is insufficient competent evidence fairly capable of supporting the trial court's determination concerning the suppression of evidence. *State v. Frank*, 350 N.W.2d 596 (N.D.1984). Here there was sufficient competent evidence to support the suppression order.

The trial court found, supported by the record, that the officers entered the home hoping, and intending, to discover evidence of crimes unrelated to the subject of the search warrant. The trial court further determined that to accomplish this goal the officers conducted, in bad faith, a general exploratory search of the house without any reasonable suspicion that the property searched and ultimately seized was stolen.

Giving these factual findings appropriate deference, *Ronngren, supra; Frank, supra*, I cannot join the majority's conclusion that the officers had a reasonable suspicion that the microwave had been stolen. Consequently, I cannot agree that the "immediately apparent" requirement needed for a valid plain view search was present in this case.

The requirement that the incriminating nature of property searched must be immediately apparent can be traced to language in *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), where the Supreme Court cautioned that a seizure based upon the plain view doctrine "is legitimate only where it is immediately apparent to the police that they have evidence before them; the 'plain view' doctrine may not be, used to extend a general exploratory search from one object to another until something incriminating at last emerges." 403 U.S. at 466, 91 S.Ct. at

2038. The rationale for the "immediately apparent" limitation is based, in part, I believe, on the recognition that well trained, conscientious police officers, by virtue of that very training and occupation, can be reasonably expected to be suspicious of everyone and everything. Thus the "immediately apparent" rule is but another constraint imposed on an officer's occupational skepticism to protect the right to privacy. Consequently, in order to deter general exploratory searches, the incriminating nature of property is deemed immediately apparent only if there is probable cause to associate the property with criminal activity. *Texas v. Brown,* 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983).

I read the majority opinion as holding that even if there were not probable cause to search the microwave, the officers' "reasonable suspicion," not amounting to probable cause, "justified the very minimal intrusion on privacy to check the serial number." Then, upon learning via radio the microwave had been stolen, there was probable cause to justify seizing it as stolen property.

Even if all that is necessary to constitute a lawful search and seizure is a reasonable suspicion, not amounting to probable cause, that property in plain view is associated with criminal activity, so as to justify recording and checking a serial number via radio, *State v. Noll,* 116 Wis.2d 443, 343 N.W.2d 391 (1984), *cert. den.,* 461 U.S. ——, 105 S.Ct. 133, 83 L.Ed.2d 73 (1984); *see generally* 2 W. LaFave, Search and Seizure, § 4.11 (1978), the record in this case does not support the majority's conclusion that the officers had reasonable suspicion that the microwave had been stolen.

The trial court found, supported by the record, that prior to running the computer check on the microwave serial number that the officers had no belief, reasonable or otherwise, that the microwave had been stolen. They merely had a generalized suspicion that Wayne Otto may have been involved in several burglaries. The microwave oven was not obviously contraband, contrary to the situation in *Texas v. Brown, supra,* where the incriminating nature of the type of balloon commonly known to carry drugs was immediately apparent to the trained officer. The mere fact that the microwave was sitting unplugged on a cooler was not suspicious in and of itself, given the ongoing remodeling of the basement kitchen, the portability of a microwave, or mere unorthodox housekeeping. Furthermore, there was not an unusual supply of microwaves or other property in the house to indicate that the premises were being used to store stolen goods. *See contra Klenke v. State,* 581 P.2d 1119 (Alaska 1978) (officers literally surrounded by property generally matching description of property known to be stolen); *State v. Streitz,* 258 N.W.2d 768 (Minn.1977) (inordinate amount of stereo equipment); *State v. Legas,* 20 Wash.App. 535, 581 P.2d 172 (1978) (unusually large supply of radio equipment). Nor was the serial number on the microwave obliterated or removed. *See contra Com. v. Accaputo,* 380 Mass. 435, 404 N.E.2d 1204 (1980); *State v. Smith,* 261 N.W.2d 349 (Minn. 1977); *State v. Legas, supra.*

Viewing the situation as a whole, there simply was no sufficient nexus between the microwave and any criminal behavior to raise a reasonable suspicion that the microwave had been stolen. Consequently, the officers were not justified in picking up the microwave, scrutinizing its serial number, and running the computer check. This conduct, carried out in bad faith,[1] constituted

---

1. Bad faith, while not a sufficient cause or even a necessary one for finding illegality, is certainly relevant. *See, e.g., Miller v. Pate,* 386 U.S. 1, 87 S.Ct. 785, 17 L.Ed.2d 690 (1967); *Napue v. Illinois,* 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); *Mooney v. Holohan,* 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935) (criminal convictions obtained by knowing use of false evidence cannot be tolerated). Here the trial court specifically found that the officers acted in bad faith by engaging in a general exploratory search, as evidenced by the great number of items not described in the warrant which were searched and seized. The finding of the officers' improper motives, coupled with the lack of any objective reasonable suspicion that the microwave had been stolen, warrants affirming the suppression order.

an unwarranted intrusion on privacy interests protected by the fourth amendment as made applicable to the State by the fourteenth amendment. *See United States v. Clark*, 531 F.2d 928 (8 Cir.1976); *United States v. Gray*, 484 F.2d 352 (6 Cir.1973), *cert. den.*, 414 U.S. 1158, 94 S.Ct. 916, 39 L.Ed.2d 110 (1974); *State v. Wilson*, 279 Md. 189, 367 A.2d 1223 (Md.Ct.App.1977); *State v. Murray*, 84 Wash.2d 527, 527 P.2d 1303 (1974), *cert. den.*, 421 U.S. 1004, 95 S.Ct. 2407, 44 L.Ed.2d 673 (1975).

Based upon the evidence and the law I would affirm the trial court's suppression order.

The majority's reliance on *State v. Gelvin*, 318 N.W.2d 302 (N.D.1982), to support overruling the trial court's finding of bad faith is troubling. In *Gelvin* this Court held that mere suspicion that contraband or evidence will be found will not invalidate an otherwise valid "inventory search conducted pursuant to standard jail house procedure." 318 N.W.2d at 307. *Gelvin* involved a standardized jail house inventory search, not a general search of a private residence. Gelvin's legitimate expectation of privacy in such an environment was minimal. Thus such an inventory search is not governed by probable cause but rather by whether the intrusion was reasonable under all the circumstances. *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). In the case before us, there was no valid plain view search to negate any bad faith motives of the officers. Indeed, just the opposite scenario existed, bad faith motivating the officers to conduct an illegal search. *Gelvin* is clearly inapposite.