HUG, Circuit Judge:
 

 Pursuant to the second superseding indictment filed June 10, 1983, defendants Robert A. Murray (“Murray”), Susan Watson (“Watson”), and James A. Moore (“Moore”) were charged with conspiracy to conceal assets in bankruptcy, in violation of 18 U.S.C. §§ 371, 152 (1982) (“Count I”). Murray and Moore were individually charged with knowingly and fraudulently transferring and concealing assets from a trustee in bankruptcy to defraud creditors, in violation of 18 U.S.C. § 152 (“Count II, Count III, and Count IV”). Murray was also indicted for destroying documents pertaining to the property and affairs of the bankrupt, Sun Stereo, Inc. (“SSI”), in violation of 18 U.S.C. § 152 (“Count V”); obstructing justice, in violation of 18 U.S.C. § 1503 (“Count VII”); and obstructing a
 
 *1531
 
 criminal investigation, in violation of 18 U.S.C. § 1510 (1982), (“Count VI”).
 

 The defendants were tried before a jury. Murray was convicted on all counts charged and sentenced to five years’ imprisonment and five years’ probation. Moore was convicted on Count I and Count IV and received a probationary sentence. Watson was convicted on Count I and was also placed on probation.
 

 On appeal, Murray contends that the court erred in refusing to suppress evidence seized from his house, in permitting the Government to impeach his testimony with evidence of a prior felony conviction, in denying discovery of the transcripts of the first grand jury proceedings, and in holding that his convictions for bankruptcy fraud, obstruction of justice, and obstruction of a criminal investigation were supported by sufficient evidence. Moore asserts that he was denied effective assistance of counsel. All defendants claim that there was insufficient evidence to support their convictions for conspiracy. We disagree and affirm the convictions.
 

 FACTS
 

 SSI and its affiliate corporations operated retail stereo outlets in California, Arizona, and Nevada. During late 1980, SSI was reorganizing under federal bankruptcy law. Michael Sannes (“Sannes”), SSI’s data processing manager and a former employee of Murray, introduced Murray to SSI’s management in an apparent effort to secure a source of capital for SSI. Murray and SSI entered into an agreement whereby SSI agreed to borrow $100,000 (the “Loan”) from Watson, who is Murray’s step-daughter and business associate, and to lease a computer (the “Computer Lease”) from Watson’s company. The Loan was to be repaid in 13 weekly installments and was secured by a pledge of 80% of the voting stock in SSL The Computer Lease stipulated that SSI would pay Murray and Watson $21,000 in stereo equipment as three months’ rent. By January 1981, Murray and Watson had acquired over $32,000 in merchandise from SSI.
 

 SSI’s financial stability worsened. In January or February of 1981, Murray was elected president of SSI and Watson became the corporate secretary. Together they proceeded to exacerbate SSI’s financial difficulties. Murray barred SSI’s former president and majority shareholder, Tom Wirth, from the business and appointed Sannes general manager. Despite the warnings of a financial consultant, Murray (1) caused SSI to issue eight checks to Watson in full repayment of the Loan, even though the Loan was not in default; (2) ordered the repossession of the computer and the software from SSI, despite the fact that the lease payments were not in arrears; (3) directed the removal of stereo and video equipment from SSI; and (4) diverted the proceeds realized from the sale of the inventories of two closed SSI outlets to his own account.
 

 On March 10, 1981, SSI was adjudicated bankrupt. Murray was charged with the responsibility of collecting the company’s assets, storing the goods, and preparing them for auction, pending the appointment of a trustee. During this time, the defendants removed a large quantity of merchandise from the SSI warehouse and stored it in a warehouse rented by Moore, on the false pretense of delivering the merchandise to the auctioneer, without disclosing these transfers to the trustee. To divert any suspicion that may have arisen by reason of their activities, the defendants attempted to conceal their actions: Watson prepared and filed with the bankruptcy court false proofs of claim against SSI, including a claim for the full amount owing under the Computer Lease, and Murray and Sannes destroyed numerous corporate business records, including SSI’s closing inventories, so that the stereo equipment could not be traced to them.
 

 In April 1981, the FBI began its investigation of possible fraud related to SSI’s bankruptcy. In the course of its investigation, the FBI executed a search warrant on the warehouse space rented by Moore and discovered a large quantity of stereo and
 
 *1532
 
 video equipment in its original SSI packaging.
 

 Sometime during the course of the various pending federal investigations, Murray-contacted Sannes to warn him not to cooperate in the FBI’s investigation of Moore and the tax evasion investigation against Murray. Unbeknownst to Murray, Sannes was carrying a concealed tape recorder. During the initial conversation, Murray instructed Sannes not to speak to the FBI about the removal of the goods from the SSI warehouse. Murray also informed Sannes that he, Murray, had a source at the United States Attorney’s Office who would tell him the names of any witnesses against him and that he had paid $10,000 to a reputed “Mafia” attorney for the names of people “that do the things necessary to make the witnesses not witnesses.” One week later, Murray met with Sannes, accused Sannes of cooperating with the FBI, and threatened to have Sannes “blown away” if Sannes testified against Murray.
 

 Pursuant to its investigation of Murray for income tax evasion, the FBI executed a search warrant for the business records located at Murray’s Squaw Valley, California home. During the search, the agents seized Murray’s financial records, as well as a large quantity of stereo equipment contained in boxes displaying the SSI name. The agents telephoned the prosecuting attorney to verify that the merchandise was evidence relevant to the bankruptcy fraud investigation.
 

 DISCUSSION
 

 I.
 
 Suppression of the Stereo Equipment Seized From Murray’s Home.
 

 Murray challenges the district court’s refusal to suppress the stereo equipment found in the basement of his home and seized by IRS agents during the course of a lawful search. The Government contends that the stereo equipment was inadvertently discovered and seizable as evidence of criminal conduct found in plain view.
 

 In the course of a legal search, officers may make a warrantless seizure of objects inadvertently found in plain view, if it is “immediately apparent to the police that they have evidence before them.”
 
 Coolidge v. New Hampshire,
 
 403 U.S. 443, 466, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971);
 
 United States v. Hillyard,
 
 677 F.2d 1336, 1341 (9th Cir.1982);
 
 United States v. Wright,
 
 667 F.2d 793, 797 (9th Cir.1982). Application of the “plain view” doctrine was recently addressed by the Supreme Court in
 
 Texas v. Brown,
 
 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502, (1983). The Court reaffirmed its statement in
 
 Payton v. New York,
 
 445 U.S. 573, 587, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980), that “[t]he seizure of property in plain view involves no invasion of privacy and is
 
 presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity.” Texas v. Brown,
 
 103 S.Ct. at 1540 (emphasis in original). The Court stated that probable cause merely requires
 

 that the facts available to the officer would “warrant a man of reasonable caution in the belief,” that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. A “practical, nontechnical” probability that incriminating evidence is involved is all that is required.
 

 (Citations omitted.)
 
 Texas v. Brown,
 
 103 S.Ct. at 1543.
 
 [1]
 
 Under the standard of
 
 Brown,
 
 the agent who had knowledge of the FBI’s investigation of the SSI bankruptcy fraud and who recognized the SSI marking on the boxes, had probable cause to believe that the merchandise might be evidence of a crime committed by Murray. His subsequent actions, designed to confirm his belief, do not affect the legality of
 
 *1533
 
 the initial seizure. Murray’s motion to suppress was properly refused.
 

 II.
 
 Use of Murray’s 1966 Felony Conviction For Impeachment Purposes.
 

 Murray was convicted in 1966 for receiving stolen property. At trial, the district court allowed this evidence for impeachment purposes pursuant to Fed.R. Evid. 609(b), which states that convictions more than ten years old are inadmissible impeachment evidence “unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect.” An erroneous evidentiary ruling will be reversed if a defendant shows that a substantial right has been affected. Fed. R.Evid. 103;
 
 United States v. Portillo,
 
 699 F.2d 461, 464 (9th Cir.1982).
 

 As required by
 
 Portillo,
 
 the district court did articulate “specific facts and circumstances” to support the introduction of Murray’s 1966 felony conviction. In finding that the probative value of the conviction in assessing the defendant’s credibility far outweighed any possible prejudice to Murray, the district court explained that witness credibility was highly probative in order to resolve the significant conflict between Murray and the Government’s chief witness, Michael Sannes. “[T]he crime of receiving stolen property suggests a lack of veracity on the part of [the defendant] _”
 
 United States v. Field,
 
 625 F.2d 862, 872 (9th Cir.1980). The district court further noted that the defense counsel was allowed considerable latitude in seeking to impeach Sannes. Allowing this impeachment evidence under the Rule 609(b) standard was not an abuse of discretion.
 

 III.
 
 Discovery of the Transcripts of the First Grand Jury Proceedings.
 

 Although grand jury proceedings are generally secret, Fed.R.Crim.P. 6(e)(3)(C)(ii) provides for disclosure of those proceedings “upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury.” Discovery of grand jury transcripts may be ordered if the party seeking disclosure has demonstrated that a particularized need exists that outweighs the policy of grand jury secrecy.
 
 United States v. Procter & Gamble,
 
 356 U.S. 677, 682, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958);
 
 United States v. Ferreboeuf
 
 632 F.2d 832, 835 (9th Cir.1980),
 
 cert. denied,
 
 450 U.S. 934, 101 S.Ct. 1398, 67 L.Ed.2d 368 (1981). Discovery matters are within the sound discretion of the trial court and will not be disturbed on appeal absent a showing of an abuse of that discretion.
 
 Pittsburgh Plate Glass Co. v. United States,
 
 360 U.S. 395, 399, 79 S.Ct. 1237, 1240, 3 L.Ed.2d 1323 (1959).
 

 Murray alleges and cites various instances of prosecutorial misconduct and alleges the bias of certain grand jurors towards him during his examination before the first grand jury. Although Murray was prosecuted pursuant to a second superseding indictment, after presentation of the evidence to a new grand jury by a different prosecutor, he contends that the second grand jury proceeding was somehow tainted by the initial proceedings, thereby creating the particularized need to pierce the secrecy of the grand jury’s actions. The alleged instances of prosecuto-rial and grand jury misconduct during the first grand jury proceedings do not amount to the particularized need required to outweigh the secrecy of the grand jury proceedings. The claimed misconduct would not have compelled the dismissal of the first superseding indictment,
 
 see United States v. Sears Roebuck & Co.,
 
 719 F.2d 1386, 1391 (9th Cir.1983),
 
 cert. denied,
 
 — U.S. -, 104 S.Ct. 1441-42, 79 L.Ed.2d 762 (1984);
 
 United States v. Al Mudarris,
 
 695 F.2d 1182, 1186-88 (9th Cir.),
 
 cert. denied,
 
 461 U.S. 932, 103 S.Ct. 2097, 77 L.Ed.2d 305 (1983);
 
 cf. United States v. Samango,
 
 607 F.2d 877, 884 (9th Cir.1979) (cumulative effect of errors operated to defendant’s prejudice by producing a biased grand jury), and
 
 a fortiori,
 
 does not now serve as the basis for dismissal of the
 
 *1534
 
 second superseding indictment. The district court’s denial of Murray’s discovery request was not an abuse of discretion.
 

 IV.
 
 Sufficiency of the Evidence.
 

 In determining whether there was sufficient evidence to convict, the court must consider whether, viewing the evidence in the light most favorable to the Government, any rational trier of fact could have found the defendants guilty beyond a reasonable doubt of the essential elements of the offenses charged.
 
 United States v. Green,
 
 745 F.2d 1205 (9th Cir.1984).
 

 A.
 
 Evidence of a Conspiracy Under 18 U.S.C. § 371.
 

 To prove a conspiracy, the evidence must show that each of the defendants was involved.
 
 United States v. Beecroft,
 
 608 F.2d 753, 757 (9th Cir.1979). “Mere association and activity with a conspiracy is insufficient _ However, a formal agreement between the [defendants] is not necessary.”
 
 Id.
 
 (Citations omitted.)
 

 The Government may prove a conspiracy by circumstantial evidence that the defendants acted together in furtherance of a common goal. “The agreement may be inferred from the [defendants'] acts pursuant to the fraudulent scheme or other circumstantial evidence.”
 
 Id.
 
 at 757. Once a conspiracy is proved, a defendant may be convicted, even if his connection to the conspiracy is slight, provided that connection is proved beyond a reasonable doubt.
 
 United States v. Dunn,
 
 564 F.2d 348, 357 (9th Cir.1977).
 

 In the instant action, the direct testimony of Sannes, an unindicted co-conspirator, of the illegal agreement to conceal assets from the bankruptcy trustee is sufficient in itself to convict the defendants.
 
 See United States v. Turner,
 
 528 F.2d 143, 160 (9th Cir.),
 
 cert. denied,
 
 423 U.S. 996, 96 S.Ct. 426, 45 L.Ed.2d 371 (1975);
 
 accord, United States v. Wolfson,
 
 634 F.2d 1217, 1219 (9th Cir.1980). Sannes testified that in February 1981, Murray and he agreed to and did remove and conceal merchandise from SSI, and that during the post-bankruptcy period, Murray, Watson, Moore, and he continued to remove and conceal stereo and video equipment owned by SSI. In addition, there was considerable circumstantial evidence demonstrating that the three defendants actively participated in a scheme to transfer and conceal assets from the bankruptcy trustee. Several witnesses testified that they saw Murray and Moore removing items from the SSI warehouse on the pretense of preparing the merchandise for auction. The false proofs of claims filed by Watson on the Computer Lease, even though the computer had previously been repossessed, is further evidence of a conspiracy to conceal assets from the trustee in bankruptcy. The substantial evidence, both direct and circumstantial, of the existence of a conspiracy, and the defendants’ connection to it, was clearly sufficient to support the verdict.
 

 Based on the same facts and circumstances, the evidence against Murray on the substantive bankruptcy fraud charges is sufficient to uphold Murray’s convictions under Counts II, III, and IV.
 

 B.
 
 Evidence of Witness Intimidation Under 18 U.S.C. §§ 1503 and 1510.
 

 Former section 1503 proscribed corrupt or violent efforts to prevent a witness from testifying.
 
 [2]
 
 Section 1510 forbids threatening efforts designed to prevent a person from communicating information about a crime to a federal investigator. Under both statutes, it is not necessary to show that a defendant actually obstructed justice or prevented a person from communicating to law enforcement officers — the statutory focus is on an endeavor.
 
 See United States v. Rasheed,
 
 663 F.2d 843, 852 (9th Cir.1981),
 
 cert. denied,
 
 454 U.S. 1157, 102 S.Ct. 1031, 71 L.Ed.2d 315 (1982);
 
 *1535
 

 United States v. Zemek,
 
 634 F.2d 1159, 1177 (9th Cir.1980),
 
 cert. denied,
 
 450 U.S. 916, 101 S.Ct. 1359, 67 L.Ed.2d 341 (1981).
 

 The recorded conversations provide convincing evidence on this issue. Murray instructed Sannes not to testify against Moore, not to cooperate with the FBI’s investigation, and to deny any involvement in the scheme to loot SSI. Ultimately, Murray threatened Sannes with physical harm if he cooperated with the investigation against either Moore or him. In view of the substantial evidence on these charges, a rational trier of fact would have a reasonable basis on which to convict Murray for obstructing justice and obstructing a criminal investigation.
 

 Y.
 
 Ineffective Assistance of Counsel.
 

 In order to establish an ineffective assistance of counsel claim, the defendant must (1) show that the attorney’s errors or omissions reflect a failure to exercise the skill, judgment, or diligence of a reasonably competent attorney, and (2) affirmatively establish prejudice as a result of the attorney’s conduct.
 
 Strickland v. Washington,
 
 — U.S. -, 104 S.Ct. 2052, 2064-65, 80 L.Ed.2d 674 (1984);
 
 United States v. Schaflander,
 
 743 F.2d 714, 717-18 (9th Cir.1984). Prejudice is established if the defendant demonstrates that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceedings would have been different.
 
 Strickland,
 
 — U.S. at -, 104 S.Ct. at 2067;
 
 Schaflander,
 
 743 F.2d at 718.
 

 Under the
 
 Strickland
 
 analysis, Moore has not shown that his trial counsel’s assistance was ineffective. Moore contends that his counsel failed to make an opening statement, failed to cross-examine some witnesses, and failed to call any witnesses in defense. Moore’s counsel did cross-examine those witnesses who he believed would implicate Moore, and decided not to cross-examine others. This is a reasonable tactical decision, as is the decision not to make an opening statement. Moore does not identify any witnesses that his counsel should have called that could have been helpful. Defense counsel’s conduct and trial strategy appear to fall within the wide range of reasonable professional representation.
 
 See Gustave v. United States,
 
 627 F.2d 901, 904 (9th Cir.1980) (“[m]ere criticism of a tactic or strategy is not in itself sufficient to support a charge of inadequate representation”);
 
 see also United States v. DeRosa,
 
 670 F.2d 889, 896 (9th Cir.),
 
 cert. denied,
 
 459 U.S. 1014, 103 S.Ct. 372, 74 L.Ed.2d 507 (1982);
 
 United States v. Kearney,
 
 560 F.2d 1358, 1368 (9th Cir.),
 
 cert. denied,
 
 434 U.S. 971, 98 S.Ct. 522, 54 L.Ed.2d 460 (1977). Moreover, Moore does not demonstrate that he was prejudiced as a result of his attorney’s trial conduct. The evidence against Moore is overwhelming; there is no reasonable probability that the outcome of the trial would have been different but for the purported inadequate representation by his trial counsel.
 

 CONCLUSION
 

 The convictions against the three defendants are AFFIRMED.
 

 [1]
 

 . The Court noted that it did not need to address "whether, in some circumstances, a degree of suspicion lower than probable cause would be sufficient basis for a seizure in certain cases.”
 
 Texas v. Brown,
 
 103 S.Ct. at 1542 n. 7.
 

 [2]
 

 .
 
 Murray was prosecuted for witness intimidation under section 1503 now set forth at 18 U.S.C. § 1512.