2 F.3d 1157
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Leonard John HODGSON, Petitioner-Appellant,
v.
Eddie YLST, Respondent-Appellee.
 No. 92-16820.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 17, 1993.
Decided Aug. 2, 1993.
 
 Before FAIRCHILD,** BEEZER and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 I. OVERVIEW
 
 2
 On May 17, 1984, following a trial by jury in the Yolo County, California Superior Court, Leonard John Hodgson was convicted of one count of forcible rape, Cal.Pen.Code Sec. 261(2), and one count of forcible oral copulation, Cal.Pen.Code Sec. 288a(c), the details of which are set out in the opinion of the Court of Appeals for the Third Appellate District, No. COO1000 (Dec. 14, 1987), Appellant's Excerpts of Record at 42-48. Hodgson was sentenced to concurrent terms of 21 years.[1] After exhausting state remedies, through both direct appeals and a number of state habeas corpus actions, Hodgson filed a petition for habeas corpus relief in federal court. On August 26, 1992, Judge Karlton adopted the magistrate judge's findings and denied Hodgson's petition. Hodgson appeals, raising the following issues: (1) Whether trial references to a polygraph examination were contrary to law and prejudicial to his right to a fair trial; (2) Whether defense counsel's failure to make a proper objection, seek a limiting instruction or move for a mistrial based on the polygraph references amounted to ineffective assistance of counsel; (3) Whether counsel's failure to investigate alleged false accusations of rape by the victim amounted to ineffective assistance of counsel; and (4) Whether the prosecution failed to disclose evidence described in issue (3). We affirm.
 
 II. DISCUSSION
 
 3
 A district court's denial of a petition for habeas corpus is reviewed de novo. United States v. Popoola, 881 F.2d 811, 812 (9th Cir.1989); Norris v. Risley, 878 F.2d 1178, 1180 (9th Cir.1989).
 
 A. Reference to Polygraph Examination
 
 4
 References to the results of a polygraph examination, an offer to take a polygraph examination, or a refusal to take such a test are disfavored and constitute inadmissible evidence in a criminal proceeding, absent a stipulation by counsel. Cal.Evid.Code Sec. 351.1;[2] United States v. Lopez, 885 F.2d 1428, 1437-38 (9th Cir.1989), cert. denied, 493 U.S. 1032 (1990); United States v. Candoli, 870 F.2d 496, 504-05 (9th Cir.1989). Hodgson argues that certain references to a polygraph examination were clearly contrary to law and prejudiced his right to a fair trail.[3] In addition, Hodgson contends that his counsel's failure to object to the testimony concerning the polygraph examination, to seek a limiting instruction, or to move for a mistrial constitutes ineffective assistance of counsel.
 
 
 5
 "A writ of habeas corpus is available under 28 U.S.C. Sec. 2254(a) only on the basis of some transgression of federal law binding on the state courts. It is unavailable for alleged error in the interpretation or application of state law." Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir.1985) (citations omitted), cert. denied, 478 U.S. 1021 (1986). Generally, we need not decide whether the polygraph testimony was improperly admitted because any impropriety would not rise to constitutional dimension. Id. However, Hodgson raises this claim within the context of ineffective assistance of counsel--a violation of a constitutional right. We therefore need only consider this issue in the context of Strickland v. Washington, 466 U.S. 668, 687-89 (1984). Under the Strickland two prong test, the appellant must (1) show that the attorney's errors or omissions reflect a failure to exercise the skill, judgment, or diligence of a reasonably competent attorney, and (2) affirmatively establish prejudice as a result of the attorney's conduct. United States v. Murray, 751 F.2d 1528, 1534 (9th Cir.), cert. denied, 474 U.S. 979 (1985).
 
 
 6
 On February 16, 1983, after Hodgson was arrested, Yolo Detective David Farmer interviewed Hodgson at the sheriff's substation. At this time, Hodgson gave a recorded statement. Prior to trial, defense counsel moved to strike a portion of the tape recorded conversation in which Hodgson, upon being asked whether he was willing to take a polygraph examination, responded:
 
 
 7
 I would be more than willing to do so. But the only problem is, from the other past incidents, it showed guilt. Every time I answer a question that is even closely related to it--you know. In fact, the last one I took, it said I lied even when I gave my name and date of birth.
 
 
 8
 The district judge granted defense counsel's motion, and a "sanitized" version of this recording was played for the jury. However, the tape also contained reference to a polygraph examination and Hodgson's willingness to take sodium pentothal, which was played for the jury without objection by defense counsel:
 
 
 9
 F. [D]uring the time that you have been on these incidents that you were accused of, did you ever take a polygraph examination?
 
 
 10
 H. Un huh.
 
 
 11
 * * *
 
 
 12
 * * *
 
 
 13
 H. I'll take a sodium pentothal I don't care.
 
 
 14
 After the "sanitized" tape was played for the jury, the following testimony was elicited, via two prosecution witnesses:
 
 
 15
 Q. Was there any later interview of Mr. Hodgson, like the one that took place that was tape recorded?
 
 
 16
 A. No, sir, there was not.
 
 
 17
 Q. There was mention of sodium pentothal, I believe, was there not?
 
 
 18
 A. Not to my knowledge, not by our department. I should also clarify that as far as the polygraph examination, as far as our department was involved, I don't recall a polygraph being done.
 
 
 19
 Q. You didn't do it?
 
 
 20
 A. No, sir.
 
 
 21
 Direct Examination of David Farmer, RT 339. Defense counsel did not object to this testimony. In addition, the prosecution asked Toni Goodman, also present at the February 16 interview:
 
 
 22
 Q. Did you ever give Mr. Hodgson a polygraph examination?
 
 
 23
 A. No, sir.
 
 
 24
 Q. Why not?
 
 
 25
 A. Because--
 
 
 26
 MR. NAREAU: I object. That calls for speculation.
 
 
 27
 THE COURT: Well, if she knows, she can answer.
 
 
 28
 Overruled, if you know.
 
 
 29
 THE WITNESS: I didn't give it to him. We returned from the consent search, and at that time he told me, along with other officers, that his wife had acquired an attorney.
 
 
 30
 BY MR. D'MARCO [sic]: Q. Did you pursue it then beyond that?
 
 
 31
 A. No.
 
 
 32
 Direct Examination of Toni Goodman, RT 475. Defense counsel did not object on any other grounds.
 
 
 33
 We believe the prosecution's questions were improper. However, because defense counsel did not object to the admissibility of the Farmer and Goodman testimony, nor seek a limiting instruction, any objection to these references was waived. Defense counsel later stated at deposition that he could not recall why he did not object to the admissibility of the above testimony and did not seek a limiting instruction, but stated that he objected to Goodman's testimony on speculation grounds because he was concerned she would testify that Hodgson would not take a polygraph examination because of his prior criminal convictions.
 
 
 34
 Regardless of whether defense counsel's reasons for not objecting had merit, it was a tactical decision within his discretion to make. Indeed, it is likely that counsel did not move to exclude all references to the polygraph examination because Hodgson's taped statement showing willingness to take sodium pentothal was favorable to him. In addition, had counsel moved to strike or request a limiting instruction, he may well have magnified the issue in the jury's view. We must "strongly presume that counsel's conduct was within the wide range of reasonable assistance, and that he exercised acceptable professional judgment in all significant decisions made." Hughes v. Borg, 898 F.2d 695, 702 (9th Cir.1990). Counsel's conduct did not fall outside this range.
 
 
 35
 Moreover, we do not think the prejudice prong of the Strickland test was satisfied. It is improbable that had the references above been excluded, the outcome of the trial would have been different. Strickland, 466 U.S. at 687-89. We agree with the magistrate judge's comments that
 
 
 36
 it is clear to this court from a total review of the record that the vague references to the polygraph were certainly not a focus of the case, were not argued to the jury as a reason for conviction, and constitute a very insignificant part of the questioning. Prejudice from the failure to object cannot be established.
 
 
 37
 CR 93, at 12. After a review of the entire record, the magistrate judge concluded that, "the polygraph/pentothal references [were] obscure in comparison with convincing evidence of Hodgson's guilt...." CR 93, at 13. We conclude that Hodgson has suffered no prejudice entitling him to habeas relief.
 
 B. Failure to Investigate
 
 38
 Hodgson also claims ineffective assistance of counsel on the theory that a more thorough investigation of the victim's past would have produced impeachment material. Hodgson claims that there was information that she had engaged in prostitution and that she had claimed to have been raped twice before. The first incident allegedly occurred while Lyon, 14 or 15 years old at the time, was hitchhiking in Sonoma County. This incident was reported but did not result in prosecution because the perpetrators were never found. On the second occasion, Lyon was raped by an unidentified male who lived in an upstairs apartment in Reno, Nevada. Lyon did not report this incident, but rather moved to Sacramento, California. Hodgson fails to bring forth any evidence supporting his contention that these claims of rape are not true, or that this information, if true, would have been admissible to impeach her testimony. Hodgson additionally contends that the victim's brother-in-law claimed that she had falsely accused him of rape on a prior occasion. There is no real support for this contention. The victim's brother-in-law, Thomas Cooper,[4] affirmatively disowned being the subject of any false accusation by the victim, and the magistrate judge found that no such statement had been made. Hodgson has failed to demonstrate that had his counsel investigated further, he would have discovered evidence of the victim's past that could have been used for impeachment purposes at trial.
 
 
 39
 C. Concealment/Failure To Disclose.
 
 
 40
 Hodgson contends that the prosecution failed to disclose information concerning the victim's "highly dubious past" during discovery. Brady v. Maryland, 373 U.S. 83 (1963); Bagley v. United States, 473 U.S. 667, 676 (1985). In particular, this evidence included allegations that the victim had purportedly been raped twice before, that the victim had made a "false accusation of rape" against her brother-in-law, that she had an ongoing alcohol problem; that she had purportedly worked as a prostitute; and that she claimed to have quit her bartending job because her employer, as well as unidentified customers, made sexual advances towards her.
 
 
 41
 Hodgson asserts that the prosecution was aware of the victim's two previous assertions of rape and information that she had a drug and alcohol problem. Hodgson also requests an evidentiary hearing for the purpose of obtaining testimony from the district attorney on this point. The record shows, however, that defense counsel was aware of this information. The prosecution filed a motion in limine to preclude or limit the defense from referring to these aspects of the victim's life, and the court granted such motion. At the hearing, defense counsel persisted in asking whether the prosecutor had any information "concerning Mrs. Lyon's proclivity for sexual activity" and whether there was "anything in this girl's background that would lead to discoverable information that [the prosecutor] knows about...." The prosecution repeatedly denied having any such information, and Hodgson has not shown any iota of evidence indicating otherwise.
 
 Based on the discussion above, we
 
 42
 AFFIRM.
 
 
 
 *
 Honorable Thomas E. Fairchild, Senior Circuit Judge, Seventh Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 On December 14, 1987, the Court of Appeal for the Third Appellate District reversed the judgment due to a "Castro/Collins" error concerning impeachment of Hodgson by use of his prior convictions (Case No. COO1000). The court remanded the case to the trial court for the limited purpose of exercising its discretion on this point. On remand, the trial court reinstated the original judgment and sentence, and the Court of Appeals affirmed (Case No. COO4797)
 
 
 [2]
 Section 351.1 of California Rules of Evidence provides, in pertinent part:
 (a) Notwithstanding any other provision of law, the results of a polygraph examination, the opinion of a polygraph examiner, or any reference to an offer to take, failure to take, or taking of a polygraph examination, shall not be admitted into evidence in any criminal proceeding ... unless all parties stipulate to the admission of such results.
 
 
 [3]
 Hodgson also claims that the references by Officers Farmer and Goodman violated the district judge's order prohibiting reference to polygraph examinations. Hodgson mischaracterizes the judge's order, which struck from a tape recording specific references to the taking of a polygraph examination, and was not a blanket prohibition of such references
 
 
 [4]
 According to Hodgson, he and his counsel, Douglas Nareau, went to the home of Tom and Patty Cooper (the victim's sister), accompanied by Hodgson's wife, Marie Christine Donaldson, and Donaldson's friend, attorney Elizabeth McDonald. Donaldson and McDonald recollect overhearing Tom Cooper tell Nareau that the victim had once falsely accused him of "the same thing, and that she had later admitted to investigating authorities that the charge was false. At his deposition, Nareau did not recall this conversation, and Cooper himself denied, under oath, that such an incident with Lyon ever occurred. Lyon made a sworn statement to the same effect. The magistrate judge found that no such false accusation of rape ever was made. CR 93, at 6-8