28 F.3d 108
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Raphael ALTSHULER, Defendant-Appellant.
 No. 93-10482.
 United States Court of Appeals, Ninth Circuit.
 Submitted June 6, 1994.*
Decided June 17, 1994.
 
 Before: TANG, PREGERSON, and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Raphael Altshuler appeals his convictions following jury trial for conspiracy to distribute and possess with intent to distribute cocaine, aiding and abetting the distribution of cocaine, and aiding and abetting possession with intent to distribute cocaine, in violation of 21 U.S.C. Secs. 841(a)(1), 846, and 18 U.S.C. Sec. 2. Altshuler contends the district court erred by admitting evidence of (1) a prior felony conviction more than ten-years-old without making specific findings on its probative value, (2) Altshuler's use of an alias in connection with the prior felony, and (3) prior drug convictions of a codefendant who did not testify at trial. We have jurisdiction under 28 U.S.C. Sec. 1291, and we reverse and remand.
 
 
 3
 * Background
 
 
 4
 Drug Enforcement Agent John Gutbub, acting undercover, was introduced to codefendant Julio Caesar Martinez by a cooperating government informant. Martinez negotiated with Gutbub to supply one and one-half kilograms of cocaine in exchange for $30,000. Altshulter was not present during the transaction and his name was never mentioned.
 
 
 5
 On the evening of July 9, 1992, Martinez and codefendant Santiago Antonio Rodriguez spent the night at the home of Altshuler's common law wife, Emilsa Gomez. Gomez testified that Martinez asked to use her phone that evening. Altshuler, who lived with Gomez, knew Rodriguez for the past thirteen years but had never before met Martinez. On July 10, 1992, Agent Gutbub and the informant placed a consensually monitored call to the phone number listed for Emilsa Gomez. During the phone conversation, the informant spoke with Martinez and Rodriguez, but Altshuler did not participate and his name was never mentioned. Martinez and Rodriguez agreed to meet with Agent Gutbub at a McDonald's later that day.
 
 
 6
 Altshuler testified that he never discussed any drug deal with Martinez or Rodriguez. Altshuler's eleven-year-old daughter testified that on July 10, 1992, Martinez stated to her father, "Let's go to McDonald's." She explained that her father then commented that his whole family would be going but that Martinez stated, "No, we'll be right back." Gomez corroborated her daughter's testimony. According to Gomez and Altshuler, because Martinez and Rodriguez had been drinking, Rodriguez asked Altshulter to drive Rodriguez's vehicle to the McDonald's.
 
 
 7
 At approximately 11:20 a.m. that day, Martinez, Rodriguez, and Altshulter arrived in the parking lot of McDonald's. Martinez walked over to the vehicle in which Agent Gutbub and the informant were waiting. Rodriguez then walked over and offered to show Gutbub the cocaine in his vehicle. They walked back to Rodriguez's vehicle, in which Altshuler sat in the driver's seat with the engine running. Rodriguez pulled out a bag containing one-half kilgram of cocaine and Agent Gutbub asked how much it contained. Rodriguez answered, "Half." Gutbub testified that Altshuler echoed the word "half" after Rodriguez said it. When agents approached to make an arrest, Altshuler drove off at a very high rate of speed, almost colliding with a DEA vehicle. After a ten to fifteen minute car chase, DEA agents captured Altshuler and Rodriguez.
 
 
 8
 Martinez testified that he, Rodriguez and Altshuler were in Jean, Nevada at 2 p.m. on July 9, in order to make the drug sale but that the informant and Gutbub did not show up. Martinez testified that Rodriguez and Altshuler showed him the cocaine and although Altshuler did not speak, Altshuler was present while he and Rodriguez discussed the transaction. Martinez stated that Altshuler and Gomez lied when they testified that Altshuler spent the entire day at his house in Las Vegas on July 9. Martinez admitted that he met Altshuler for the first time on July 9.
 
 II
 Prior Conviction
 
 9
 Rule 609(b) provides that more than ten-year-old convictions are inadmissible impeachment evidence "unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect." Under Rule 609(b), the government must present evidence upon which the district court can make this determination. United States v. Portillo (Portillo I) 633 F.2d 1313, 1323 (9th Cir.1980), cert. denied, 450 U.S. 1043, and cert. denied, 474 U.S. 1043 (1981). The district court then must make findings of specific facts and circumstances to support the introduction of the conviction. Id.; United States v. Portillo (Portillo II), 699 F.2d 461, 464 (9th Cir.1982); see also United States v. Murray, 751 F.2d 1528, 1533 (9th Cir.), cert. denied, 474 U.S. 979 (1985).
 
 
 10
 Here, the government conceded that Altshuler's 1982 prior felony drug conviction involving marijuana was more than ten-years-old. Altshuler objected to use of this conviction for impeachment. Nonetheless, the district court permitted use of the prior conviction and stated that the probative value of the conviction substantially outweighed the prejudicial effect and that the prior conviction was "relevant as to the witness' believability."[1]
 
 
 11
 By these statements alone, the district court did not make sufficient findings to support the admission of the remote conviction. See Portillo II, 699 F.2d 463-64 (statement that conviction was of probative value for impeachment purposes and substantially outweighed any possible prejudice was insufficient because not supported by specific facts and circumstances); cf. Murray, 751 F.2d at 1533 (district court made sufficient findings where explained that witness credibility was highly probative in order to resolve conflict between defendant and government's chief witness and that defense counsel had been allowed wide latitude in impeaching government's chief witness).
 
 III
 Use of Alias
 
 12
 Altshuler also contends that the district court improperly admitted prior bad character evidence by allowing the government to introduce evidence of his use of a false name in connection to his arrest in 1982.
 
 
 13
 We review for abuse of discretion the district court's admission of evidence and its determination of the scope of cross-examination. United States v. Jackson, 882 F.2d 1444, 1446 (9th Cir.1989).
 
 
 14
 Evidence of a prior bad act is not admissible to prove the character of a person in order to show action in conformity therewith. Fed.R.Evid. 404(b). Nonetheless, rule 404(b) evidence may be used for impeachment purposes. United States v. Gay, 967 F.2d 322, 328 (9th Cir.), cert. denied, 113 S.Ct. 359 (1992). Upon cross-examination, specific instances of conduct by the witness concerning the witness' character for truthfulness or untruthfulness may be inquired into at the discretion of the court. Fed.R.Evid. 608(b). The instances inquired of must be "probative of truthfulness or its opposite and not remote in time." Id. advisory committee's note. We have held that evidence of prior intentional false statements is probative of untruthfulness where a defendant charged with making false declarations before the grand jury alleges that her false statements were the result of a faulty memory. See United States v. Jones, 900 F.2d 512, 520-21 (9th Cir.), cert. denied, 498 U.S. 846 (1990).
 
 
 15
 When sworn in by the clerk, Altshuler testified that his real last name is "Escoto" but that he has been using the name "Altshuler" for the past several years. On cross-examination by the government about the alias, Altshuler stated that he used a non-Hispanic alias because it helps him in finding jobs and in evading deportation. The government then cross-examined Altshuler at length about his use of two false names in relation to the 1982 felony conviction. In particular, the government questioned Altshuler about a fingerprint card with the name "Raphael Escobar" that he signed in 1982. Altshuler testified that the wrong name was recorded by authorities because his English was broken and the arresting officers did not speak Spanish. During closing argument, the government stressed that someone who could not tell the truth in 1982, would also not tell the truth today.[2]
 
 
 16
 We hold that the district court abused its discretion by permitting cross-examination on Altshuler's use of an alias in 1982. The government failed to make a showing that Altshuler's use of an incorrect name in 1982 constituted an intentional false statement, thereby diminishing any probative value for untruthfulness. Cf. Jones, 900 F.2d at 520-21. Moreover, the prejudice was high given that the case rested on the credibility of Altshuler's, Gomez's, and their daughter's testimony. The use of an alias or mistaken name also did not bear directly on the charged offenses. Cf. id. Finally, the specific instance of conduct occurred more than ten years' prior and remoteness is a factor for the district court to consider in assessing the probative value of the evidence. See Jackson, 882 F.2d at 1448.
 
 
 17
 Based upon our review of the record, the admission of the 1982 felony conviction and the cross-examination concerning the use of an alias in 1982, more probably than not materially affected the verdict and was not harmless. See United States v. Brooke, 4 F.3d 1480, 1488 (9th Cir.1993). Little direct evidence existed to show Altshuler's guilt aside from his association with guilty codefendants and the verdict rested largely on Altshuler's credibility. Because the district court erroneously admitted impeachment evidence and this evidence pervaded Altshuler's trial, we reverse and remand for proceedings consistent with this opinion.[3]
 
 
 18
 REVERSED and REMANDED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 On cross-examination by the government, Altshuler admitted a felony conviction in 1982 but the government did not mention that the felony involved drugs
 
 
 [2]
 In closing, the government stated:
 Mr. Altshuler testified and he told us that he never used--well, I don't want to mischaracterize his testimony. He revealed to us after a little bit of prodding, more than a little bit of prodding, that in fact in 1982 he gave a false name when arrested. And even after I confronted him with a fingerprint card with his own handwriting he acknowledged finally, and he signed that card Raphael Escobar. He didn't want to admit that to you even while the piece of paper was sitting in front of him, that this was not the first time he utilized a false name.
 Part of your consideration of evidence and of witnesses and credibility of witnesses is to determine whether the witness has an interest in the outcome of the case. Well, Mr. Altshuler admitted to you he has a concern about deportation. And it is pretty obvious that he has a concern about his family, as anybody would. I would suggest to you that he has a bias in this case. He has a reason to tell you something other than the truth, just as he told the authorities in 1982 something other than the truth, just as he told the authorities in 1992 something other than the truth.
 ... Where I disagree with [Trial Counsel] is to whether or not the occurrences of twelve years ago have any bearing on the case. The occurrences of twelve years ago have a bearing on the case, I would suggest in this way: When Defendant Altshuler refused to acknowledge that he lied to the police in 1982, and when he saw his own signature, Raphael Escobar, and refused to acknowledge it, he was demonstrating to you that he is not worthy of belief.
 And that is the purpose of that testimony and that is the purpose of impeaching him with a prior felony conviction. The purpose is to disclose to you, to reveal to you, that this is somebody who is going to lose in a truth-telling match, I would submit to you, with Mr. Martinez who got on the stand and admitted to you what he did.
 
 
 [3]
 In case of a retrial, we note that Altshuler's third claim, that the district court committed plain error by permitting cross-examination of Altshuler concerning his knowledge of Rodriguez's prior drug convictions, lacks merit. Altshuler testified that he knew Rodriguez for the past thirteen years and that he was surprised that Rodriguez had arranged a drug transaction at the McDonald's. His knowledge of Rodriguez's prior convictions was therefore highly relevant and probative